DIEKMANN, SHERIFF, ET AL. *v.* EVANSVILLE PRODUCERS COMMISSION ASSOCIATION

[No. 27,677. Filed March 23, 1942.]

*George N. Beamer,* Attorney General, *Samuel D. Jackson,* former Attorney General, and *Joseph P. McNamara,* Deputy Attorney General, for appellants.

*Richard Waller, Richard McGinnis,* and *D. Bailey Merrill,* all of Evansville, for appellee.

RICHMAN, J.—Appellants were permanently enjoined from collecting gross income tax assessed against appellee for the years 1933, 1934 and 1935. Appellee is a cooperative marketing association organized under the laws of Kentucky and qualified as a foreign corporation to do business in Indiana. The question is whether appellee's business falls within the exception of § 7(b), ch. 50, Acts of 1933, at p. 393, reading:

> "Section 7. There are, however, excepted from the provisions of this act: . . .
> "(b) Labor, agricultural and horticultural societies and organizations not operated for profit; . . . *Provided, however,* That this exception shall apply only to companies, organizations, corporations and/or societies named in this subsection which are not organized for profit, and no part of the income of which inures to the benefit of any stockholder or other private individual."

The evidence discloses that appellee acts as a commissioned agent for shippers at the stockyards located in Evansville, buying and selling livestock, charging tariffs filed with the Secretary of Agriculture and in competition with others engaged in the same business. The bulk of its business consists of commissions on sales but in 1934, 7.5% and in 1935, 8.4% of its total

volume consisted of carload purchases wherein it took title. Sometimes it purchases stock at the Evansville stockyards and holds same "to sustain the price" and sometimes purchases in western markets for sale to persons from whom it has orders in less than carload lots. The profit, if any, derived from such sales is added to the funds realized from direct commissions. Any other income is added to get its gross income from which its expenses are deducted leaving a net sum available for refunds. It reserves some part thereof as capital with which to do business. If a refund, which it calls a patronage dividend, is paid it goes to the persons who shipped to it in the year when the surplus was accumulated. Every person, firm or corporation not a member of a farm organization shipping stock to appellee is charged a $5.00 annual membership fee, retained out of his or its *pro rata* share of the refund, which fee is paid to the Farm Bureau organized in the county of his or its residence. Patronage dividends when paid are based on the ratio of the member's volume of business to the total volume of appellee's business for the same period.

Operating statement for the years in question is as follows:

|  | 1933 | 1934 | 1935 |
|---|---|---|---|
| Deductions from cattle sales __$ | 6,611.10 | $10,910.20 | $17,796.15 |
| Deductions from calf sales _____ | 3,178.80 | 6,016.50 | 7,556.35 |
| Deductions from hog sales _____ | 11,113.75 | 16,533.95 | 20,296.45 |
| Deductions from sheep sales ___ | 1,165.70 | 1,880.90 | 3,533.55 |
| Total deductions _____ | $22,069.35 | $35,341.55 | $49,182.50 |
| Excess from livestock _____ | | 2,008.59 | 1,981.96 |
| Add other income_____ | 27.28 | 21.15 | 802.43 |
| | $22,096.63 | $37,371.29 | $51,966.89 |

Expenditures

| | | | |
|---|---|---|---|
| Salaries and labor | 10,445.91 | 18,945.76 | 26,037.77 |
| Dues to National | 649.43 | 1,082.93 | 1,286.77 |
| Office expense | 2,337.55 | 3,304.10 | 3,495.29 |
| Directors | 300.00 | 461.99 | 624.84 |
| Traveling | 1,742.47 | 1,301.92 | 1,629.24 |
| Miscellaneous | 2,030.83 | 1,225.53 | 2,693.84 |
| Bad debts and other expenses | 54.86 | 6,924.71 | 440.53 |
| Livestock operations | 459.59 | | |
| | | | |
| Total expenses | $18,020.64 | $33,246.24 | $36,208.28 |

Available for refunds
on deductions _____$ 4,075.99 $ 4,125.05 $15,758.61

The items of $2,008.59 in the year 1934, and $1,981.96 in the year 1935, were explained as the profit realized on its purchases and sales of livestock to which it took title but it was further explained that the figures do not represent a true profit because of items of expense impossible to allocate to specific transactions and therefore included generally in expenses. It may be assumed that the item of $459.59 in the year 1933 represents a loss instead of profit on similar operations. It is conceded that appellee's intent is to charge its patrons, for whom it buys, the actual cost of the livestock purchased for them so as not to make a profit for itself on the transaction. In the twelve years of its existence to 1935 it had suffered a net loss of $2,299.85 on such operations. It is apparent that the bulk of a member's refund, or dividend, represents a return of a *pro rata* portion of the commissions (denominated "deductions" in the operating statement) earned by appellee but it is also true that some part of such dividend may represent the member's aliquot share of the profit realized by appellee on transactions where stock is purchased by it for resale. There is no contention that appellee engages in any other activity than those mentioned.

To be within the exception appellee must be both an agricultural organization and one not operated for profit no part of whose income inures to the benefit of any private individual.

While it is doubtful if appellee is an "agricultural" organization within the meaning of the Gross Income Tax Act and likewise doubtful whether it is "not operated for profit," we deem it unnecessary to discuss either of those points because it is clear that some part of its income inures to the benefit of private individuals and for that reason, regardless of the others, appellee is not within the exception in the statute above quoted.

Its principal argument to the contrary is based upon a clause in the Kentucky Act under which it was incorporated which clause is found also in the Indiana "Cooperative Marketing Act" (Acts 1925, ch. 20, § 2, p. 42, p. 43) reading: "Associations organized hereunder shall be deemed 'non-profit', inasmuch as they are not organized to make profit for themselves, as such, or for their members as such, but only for their members as producers."

Instead of supporting appellee's contention we think this clause indicates that the purpose of the organization is to make profit, not indeed for the corporation, but for persons shipping their products to the corporation. It is disclosed by the operating statement that in fact appellee does make a profit for those persons which accrues and is distributable in the form of "patronage dividends" or, as denominated in the operating statement, "refunds on deductions." "Members as producers" certainly are private individuals. Farmers shipping livestock raised on their farms do not cease to be private individuals when appellee pays to them sums which would have been profit to appellee if it

had not been obliged to pass it on to the farmers with and for whom it did business.

Appellee's argument further ignores the fact that the word "income," not "profit," is used in the phrase of the statute under consideration. Assuming that the corporation does not make a profit because it has no right to do so under its charter, nevertheless it has income, meaning receipts, as used in the Gross Income Tax Act and a very substantial part of that income (more than a third in 1935) inures, and is set up on its books, to the benefit of the producers with whom it does business.

When a shipper pays appellee a commission for selling livestock the amount so paid belongs to appellee. If it costs appellee more than that commission to make the sale, there is no obligation on the part of the shipper to make up the difference. If it costs less appellee may use the excess for any purpose in connection with its business, including making good the loss on some other shipment. All commissions received by appellee become a part of its gross income. If at the end of the year its expenses have been less than the total of its income, the surplus still belongs to appellee, may be reserved as working capital and such reserve may be lost in whole or in part in a succeeding bad year. Or such surplus may be distributed as soon as the accountants have finished allocation. Appellee may have lost money on every one of numerous shipments by one producer but if on the whole it has had a successful year, he gets the same dividend that any other shipper receives who has furnished an equal volume of business. While the dividend is not based on a share interest in the corporation, it is no less a dividend, not a return of an unused portion of a commission. We are satisfied that there

is no reasonable hypothesis for holding that appellee does not have income inuring to the benefit of its patrons.

The decree is reversed with instructions to dissolve the injunction.

NOTE.—Reported in 40 N. E. (2d) 327.