DEPARTMENT OF TREASURY v. ICE SERVICE, INC.

[No. 27,696. Filed April 27, 1942.]

*George N. Beamer,* Attorney General, and *Joseph P. McNamara* and *Charles W. Grubb,* Deputy Attorneys General, for appellant.

*Isidor Kahn, Harry P. Dees,* and *Edward O. Craft,* all of Evansville, for appellee.

SWAIM, J.—This is an appeal from a judgment which the appellee recovered against the Department of Treasury of Indiana for $7,433.36 representing sums

paid as gross income tax on amounts received by the appellee during the years 1933 to 1936, both inclusive.

The appellant relies for reversal on the assigned error that the court erred in overruling the appellant's motion for a new trial, which motion was on the grounds that the decision of the court was not sustained by sufficient evidence and was contrary to law.

The sole question presented by this appeal is the question as to whether the amounts, on which the tax in question was paid, were received by the appellee as an agent.

The evidence discloses that the appellee was organized as a corporation under the laws of the State of Indiana, on May 22, 1930, by four companies which were then engaged in the business of manufacturing, selling and distributing ice in Vanderburgh County, Indiana. These four companies entered into a verbal agreement by the terms of which it was agreed that the appellee company should thereafter sell and distribute the ice manufactured by the four manufacturing companies. Pursuant to the agreement an audit was made of the business done by the four companies during the years 1927 and 1928 and it was thereby determined what proportion of the total business of the four companies each company had done during those two years. It was agreed that each of the four manufacturing companies should annually furnish to the appellee company ice for sale in the same proportion its sales during the two years bore to the total sales of the four companies for that period; and that each company should share in the distribution of the proceeds from the sale of ice by the appellee in the same proportion.

Each of the manufacturing companies, on the organization of the appellee company subscribed for stock in, and furnished capital to, the appellee com-

pany. The operating expense of the appellee company, in the sale and distribution of the ice, was deducted from the gross receipts from the sale of the ice and the balance of the proceeds then distributed proportionately as above indicated to the four manufacturing companies. Each of the manufacturing companies carried on its books the gross receipts from the appellee from the sale of its (the manufacturing company's) proportionate share of the ice sold by the appellee and also carried on its books, as an expense of its business, its proportionate share of the sales and distribution costs of the appellee company. The appellee carried the proceeds from the sale of ice on its books in the same manner.

Each of the manufacturing companies paid gross income tax on its proportionate share of the total amount received from the sale of ice by the appellee without deduction of the expense of the sale and distribution of said ice. Such gross income taxes paid by the manufacturing companies were at the proper rate for each company's proportionate share of the wholesale and retail sales made by the appellee company.

The appellee company, in addition to the sale of ice, was also engaged in the sale of refrigerators, but on the receipts from these sales the appellee company does not question its liability to pay gross income tax. The record contains evidence to sustain a finding of all of the above facts.

Agency has been defined by the American Law Institute as follows:

"Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and

subject to his control, and consent by the other so to act." Restatement of the Law of Agency, Vol. I, § 1, p. 7.

The agency relationship arises from the consent of the parties, out of a contractual agreement between the parties, but it is not necessary that the contract or the authority of the agent to act be in writing.

The question of whether the agency exists is ordinarily a question of fact which may be established as any other fact, either by direct or by circumstantial evidence. *Jasper County Farms Company* v. *Holden* (1923), 79 Ind. App. 214, 137 N. E. 618.

The creation of the relationship depends upon the intention of the parties. The principal must intend the appointment of the agent and the agent must intend to accept the appointment and act upon it. 2 C. J. S. § 17, p. 1041.

In the instant case the appellant does not contend that the manufacturing companies could not have appointed the appellee corporation as a sales and distribution agency for the four manufacturing companies, but contends that there is no evidence to support the finding of the court that such agency existed. To support its contention the appellant points out that the appellee made federal net income tax returns in which it reported receipts from the sale of ice under the item "Cost of Goods Sold" and similar amounts under the item "Material or Merchandise Bought for Manufacture or Sale." The appellant insists that this fact shows conclusively that the appellee believed it was buying the ice from the ice manufacturers and was selling it for its own account and not as agent. At the most this fact amounts only

to evidence tending to support the contention of the appellant, but in determining the sufficiency of the evidence to sustain the finding of the trial court we look only to the evidence most favorable to the appellee and do not weigh conflicting evidence. *Anderson* v. *Knotts* (1914), 181 Ind. 434, 104 N. E. 754; *Cleveland, Columbus, Cincinnati and Indianapolis R. Co.* v. *Wynant* (1893), 134 Ind. 681, 34 N. E. 569.

The appellant also insists that by the following facts: that the ice of the four manufacturing companies was commingled; that at times one of the manufacturing companies would temporarily shut down its plant and during such shut-down would furnish no ice to the pool; that the appellee did not account to each of the manufacturing companies for proceeds of the sale of the particular ice furnished by such manufacturing company, but only distributed the proceeds on the basis of the proportionate share of the ice furnished by the four companies, it is shown conclusively that the ice was not sold by the appellee as the agent of the four companies. We cannot agree with the appellant on this contention. We see no reason why the four companies and the appellee could not agree that the ice manufactured by the four manufacturing companies should be furnished by said four companies annually proportionately to the business each had done during the years covered by the audit, nor why the ice so furnished should not be commingled in a general pool, sold from such general pool by the agent and the proceeds accounted for by the agent, periodically, on the basis of the proportion of the ice furnished by each of the four manufacturing companies. It was not necessary that the ice of the four companies be kept separate or that the proceeds of each sale made by the appellee be accounted for to the company which

furnished the ice for that particular sale. Nor do we see any reason why the parties among themselves could not have agreed, as they apparently did, that the proportion of the ice to be furnished by each of the companies was to be figured on an annual basis. If this was proper then it was not essential that each company furnish its proportionate share of the ice each day, each week, or each month.

In cooperative marketing agreements we find many examples of this type of agency which have been upheld by the courts. In *The Burley Tobacco Society* v. *Gillaspy* (1912), 51 Ind. App. 583, 585, 100 N. E. 89, appellant, a corporation organized under the laws of the State of Kentucky, entered into a written contract with appellee and other growers of the Burley tobacco in this State, whereby appellant was named "as sole agents for the purpose of receiving, commingling, handling, warehousing, inspecting, insuring, grading, financing and selling all of said tobacco" grown by each of the growers. The court recognized this contract as a valid agency agreement between the parties thereto.

In the application of the principles to determine whether an agency has in fact been created it is generally held that cooperative marketing contracts create between the members and the association the relation of principal and agent. 2 Am. Jur., Agency, § 24, p. 27. *Texas Certified Cottonseed Breeders Assn.* v. *Aldridge* (1933), 122 Tex. 464, 61 S. W. (2d) 79; *Spencer Co-Op. Live Stock Shipping Assn.* v. *Schultz* (1932), 209 Wis. 344, 245 N. W. 99; *Mountain States Beet Growers Marketing Assn.* v. *Monroe* (1928), 84 Colo. 300, 269 P. 886; *Haarparinne* v. *Butter Hill Fruit Growers Assn.* (1922), 122 Me. 138, 119 A. 116. In the latter case in a suit by an association member

to recover from the association for the price of apples, part of which were frozen before delivery to the association, it was held that because the contract between them created only an agency, and did not amount to a sale of the apples, the member could not recover from the association.

In *City of Owensboro* v. *Dark Tobacco Growers' Association* (1927), 222 Ky. 164, 165, 166, 168, 300 S. W. 350, the appellant city assessed for taxation $350,000.00 worth of tobacco in the warehouses of the appellee association. The appellee association contended that the tobacco was exempt from taxation under the provisions of a statute exempting " '. . . unmanufactured agricultural products in the hands of the producer or in the hands of any agent or agency of the producer to which said products have been. conveyed or assigned for the purpose of sale by the producer.' " The court there stated as one of the questions necessary for decision, "Is the Tobacco Growers' Marketing Agreement a contract of sale to the association, or is it merely a contract of agency?" There the cooperative agreement said that "the association agrees to buy, and the grower agrees to sell and deliver to it all the tobacco produced by or for him or acquired by him during a specified period." In deciding, in spite of this language, that the agreement created an agency relation between the parties, the court said, "In determining whether an agreement between parties is a sale or whether it is a mere contract of agency, isolated expressions in the instrument indicating whether it is one or the other are not necessarily controlling; on the contrary the court will ignore apparently inconsistent language used, and look to the real nature of the agreement between the parties, what its real purpose was, and

what, from the nature of the transaction, must have been in the minds of the parties.

". . . The whole conception of the organization was that it was a marketing association created and organized for the purpose of advantageous marketing of the growers' product, not for the benefit of the association, but for the benefit of its members, who were all either growers or landlords.

"A consideration of these facts makes it impossible that the parties could have had in mind any other thing than the creating of a sales agency in the execution of the several contracts."

So, in the instant case, we find no difficulty in saying that the evidence was sufficient to support the finding of the trial court that the four manufacturing companies in organizing the appellee corporation and in agreeing how the sale of ice should be handled through the appellee were attempting, simply, to provide an agency for the sale and distribution of the ice manufactured by the four companies in order to avoid the unnecessary expense of each company operating its own sales and distribution.

Finding no reversible error the judgment of the trial court is affirmed.

NOTE.—Reported in 41 N. E. (2d) 201.