WESTERN ADJUSTMENT AND INSPECTION CO. *v.* GROSS
INCOME TAX DIVISION, STATE OF INDIANA.

[No. 29,497. Filed May 28, 1957.]

*George T. Schilling, Stuart, Devol, Branigin & Ricks,* of Lafayette, for appellant.

*Edwin K. Steers,* Attorney General, *Carl M. Franceschini* and *George B. Hall,* Deputy Attorneys General, for appellee.

ARTERBURN, C. J.—This case is here on transfer by reason of four Judges of the Appellate Court failing to concur in the result, under Acts 1901, ch. 247, §15, p. 565, being §4-209, Burns' 1946 Replacement. This case was brought by the appellant, as a taxpayer, under Acts 1947, ch. 370, §3, p. 1471, being §64-2614, Burns' 1951 Replacement, for the purpose of recovering gross income taxes and interest paid for the years 1939 through 1950. Judgment was rendered for the Gross Income Tax Division in the court below. Appellant's claimed error is solely that the decision of the trial court is contrary to law. The appellant is a foreign corporation, organized by certain insurance companies under the laws of the State of Illinois for the purpose of adjusting claims on behalf of such insurance companies. It operated for profit originally, and in 1938, notified its customers that it would render its adjustment service at cost. In its application for admission to do business in Indiana, it stated its business to be:

"The equitable adjustment of losses, whether fire, marine, tornado or windstorm; the storage, handling and sale of all kinds of property under claim for damage; the survey and inspection of all classes of insurance hazards and the making and publishing of maps, surveys and diagrams.

"All of said services to be rendered at cost as agent of the insurance companies served by this corporation."

During the period in question, the companies accepted adjusting assignments under an oral agreement by which it billed the various insurance companies for which it performed its service. These bills were designed to allocate the proper expense to each loss adjustment. These expenses involved the direct and specifically allocated expenses in each particular case, such as the hotel bills, telephone calls, and other items expended by or for the adjuster, as well as the general administration expense. This latter item was estimated at the time, and was subject to an adjustment at the end of the year when the total actual costs were determined. These bills were more than the actual cost of the operation during the year. In each such year the excess was refunded by the appellant to its customers in the ratio that the billing sent to each insurance company bore to the total billings. All the receipts during the taxable period in question were derived from these bills, and no other source. The division of this general administrative expense among the insurance companies was based upon the "volume" of business. Whether by this term was meant the number of adjustments, the dollar amount of the total adjustments, the time element, or some combined formula, is not made clear.

It is the contention of the appellant that the amounts received by the appellant from the billings to the insurance company are not "receipts" within the meaning of the Gross Income Tax Act, and are not taxable but are merely repayments to the appellant, as an agent for the insurance companies, for money advanced and expenses incurred. On the other hand, the Gross Income Tax Division contends that all of such receipts are taxable except possibly those items of

reimbursement and repayment for direct expense, which may be specifically allocated to a particular loss or service for the insurance company, and that only those reimbursements for direct expenses advanced are non-taxable.

We are foreclosed, however, from a consideration of the reimbursement and repayment of such items of directly assignable expense, since the appellant in this case has made no attempt to segregate the receipts into those items of strictly allocable expense, and those which are general administrative expense. Therefore, we do not have presented any question as to the tax liability for reimbursement of direct items of expense, such as hotel bills, telephone calls, et cetera.

It is a general rule that a taxpayer must segregate and separate items having different tax liability or exemptions in order to bring himself within such provisions, and a failure or inability to do so subjects the unsegregated amount to the regular rate or the highest rate if so provided by statute. Acts 1937, ch. 117, §4, p. 604, being §64-2604, Burns' 1951 Replacement; *Dept. of Treasury* v. *Ingram-Richardson Mfg. Co.* (1941), 313 U. S. 252, 85 L. Ed. 1313, 61 S. Ct. 866; *Gross Income Tax Division* v. *L. S. Ayres & Co.* (1954), 233 Ind. 194, 118 N. E. 2d 480; *Samper* v. *Indiana Dept. of State Revenue* (1952), 231 Ind. 26, 106 N. E. 2d 797; *Dept. of Treasury* v. *J. P. Michael Co.* (1938), 105 Ind. App. 255, 11 N. E. 2d 512; 51 Am. Jur., Taxation, §688, p. 643.

The Gross Income Tax Act is quite comprehensive in its definition of "gross income", and after an enumeration specifically states "all other receipts of any kind or character received from any source whatsoever, and without any deductions on account of return of capital invested, the cost of the property sold, the cost of

materials used, labor cost, interest, discount, or commissions paid or credited, or any other expenses whatsoever paid or credited, and without any deductions on account of losses, and without any other deductions of any kind or character . . .," shall be taxable." There is no specific word of exception in the Act which covers the exact situation we have presented here.

Appellant says the legislature did not intend to tax funds received in repayment of money borrowed, or in repayment of advances or expenses made or incurred by a taxpayer on behalf of another, and continues:

"These conclusions are inherent in the concept of gross income although not apparent on the face of the statute. There is no *statutory provision expressly including either monies received by an agent* or reimbursements of expenses." (Our italics).

Regulation 65, (approved July 31, 1934), of the Gross Income Tax Division does exempt "money or property received by a taxpayer in which he has no right, title or interest, but is received as an agent for a third party or parties. . . ."

Regulation 1602, (approved July 1, 1937), excludes from taxation the repayment of borrowed money.

Regulation 1609, (approved July 1, 1937), provides for the exclusion of traveling expenses, and expenses incidental to employment, which are itemized and billed to an employer for which the *employee* receives reimbursement. (Our italics).

Appellant states "the principle implicit in Regulation 1609 has a wider application than just the employer-employee relationship. If valid at all, it must encompass all relationships whereby one person incurs expenses for another under an agreement to be reimbursed." In support of this statement the appellant relies upon the cases of *Depart-*

*ment of Treasury* v. *Ice Service, Inc.* (1942), 220 Ind. 64, 41 N. E. 2d 201, and *Gross Inc. Tax Div.* v. *Ind. Assoc. Tel. Corp.* (1949), 118 Ind. App. 669, 82 N. E. 2d 539.

To interpret an exception to the act so that it will "encompass *all* relationships whereby one person incurs expenses for another under an agreement to be reimbursed" (our italics) would, in our opinion, to all practical effects, convert a gross income tax into a net income tax. Without too much difficulty, the receipts in most cases could be made under a contract or oral agreement by which a certain share or portion thereof is a reimbursement for expenses incurred, leaving a tax merely upon a remainder or surplus as a presumptive profit. The gross income tax is applicable regardless of any profit being involved. *Walgreen Co.* v. *Gross Income Tax Div.* (1947), 225 Ind. 418, 75 N. E. 2d 784, 1 A. L. R. 2d 1014.

A contrary interpretation would result in most non-profit transactions being tax-free. By extending and engrafting exemptions upon a gross tax, it progressively becomes a net tax. We are not arguing that this would be more equitable or just— that is not within our province for decision. The taxing policy, and the basis upon which the tax is to be levied, as well as the exemptions applicable, is for the legislature to determine. *Department of Treasury* v. *Crowder* (1938), 214 Ind. 252, 15 N. E. 2d 89.

We are in effect asked to extend the scope of exemptions of a broad gross income tax by an interpretation for which we can find no specific verbal basis in the Act. Examining the cases cited by appellant, we find that in the Ice Service case, that four ice manufacturing companies organized a corporation to handle the sale or distribution of ice manufactured by them. This corporation sold the ice, and received all the sale pro-

ceeds. It retained therefrom its cost of operation, and distributed the balance to the four interested manufacturers. The question decided in that case was that the Ice Service Company was purely a sales agency, and its total gross receipts from sales were not taxable to it, but to its principals. The court there held agency was an issuable fact found by the trial court, and sustained by the evidence. No issue was there made as to the taxability of the amount retained as reimbursement for selling expense.

In the Indiana Associated Telephone Corporation case, decided in the Appellate Court a year later based upon the Ice Service case, three operating telephone companies did all their billing through a bureau operated by one of the three companies, the Indiana Associated Telephone Corporation. This bureau was not a separate corporation. The other two telephone companies remitted their share of the direct and administrative expenses to the third telephone company after they were allocated and prorated. The Appellate Court held that such remittances to the Indiana Associated Telephone Company for reimbursement were not taxable, holding that the bureau was an agency. It should be noted in that case that the taxpayer involved was not the bureau which was performing the service, but was one of the corporations.

The Appellate Court said on page 676 of 118 Ind. App. 669, 82 N. E. 2d 539:

"Appellee was merely a trustee for distributing the expenses of operating the agency. It could not have retained the money so received for its own use and purpose. Therefore, under the Regulations of appellant, these funds were not taxable. Regulation No. 1612 of the Regulations, Gross Income Tax Division, Dept. of Treasury of Indiana, April 15, 1940; Regulation 1211, Indiana Gross Income Tax Regulations Series VII approved April 27, 1946."

No issue was made in that case as to whether or not the bureau was taxable upon its receipts for services performed. Any dicta to such an effect in that case is disapproved since no issue on that point was there involved. Under the Gross Income Tax Act of 1933, as amended, §64-2601, subsection (a) Burns' 1951 Replacement, the term "person" used as a taxpayer, includes a variety of formal and informal organizations including the term "bureau."

In fact, the Indiana Associated Telephone opinion was based upon Regulation 1211 of the Indiana Gross Income Tax Division, (approved April 27, 1946) :

> "Money or property received by a taxpayer in which he has no right, title or interest, but is received as agent for a third party or parties, will not be included in the taxpayer's individual return of gross income, but any commission received by him for his services as agent must be included as taxable gross income."

The case before us fails to qualify for the exemption provided therein.

Likewise, the case of *Storen* v. *Jasper County Farm Bur. Co-op. Assn.* (1936), 103 Ind. App. 77, 2 N. E. 2d 432, has no application here since it turned upon the section of the Act that exempts agricultural etc. companies, organizations and corporations not operated for a profit, and it was found not to qualify for such exemption. *Diekmann* v. *Evansville Producers Com. Assn.* (1942), 219 Ind. 636, 40 N. E. 2d 327.

As stated previously, we can find no specific statutory exemption within which the receipts under consideration fall. Appellant is not receiving funds in which it has no right, title, or interest. It is not receiving funds merely to turn such funds over to a third person, but on the contrary, is using the funds in the operation of a business of considerable size. The appellant is not a mere temporary conduit through

which the funds pass intact, so to speak. The appellant and its customers, the insurance companies, are not one and the same person.

Looking at the evidence here most favorable to the finding of the trial court as we must, the relationship of the appellant has characteristics of an independent contractor with its customers and insurance companies.

Mr. Ben M. Butler, General Manager of the appellant, on examination, stated in substance that:

> The stockholders and non-member companies do not supervise the branch offices. . . . Any expense we incur, the insuring companies are liable for. We consult with them as to employment of attorneys but not so much as the experts. It is left pretty much to our judgment under the circumstances which exist and the amount of money involved in the loss. The insuring company does not exercise control over the adjuster, other than the payment of the claim when it is presented to it in the form of a proof of loss; the adjuster has full authority to proceed with the adjustment of the loss and agree upon the amount which is binding upon the company.

This witness also added that whether the expenses incurred are "reasonable or unreasonable in the minds of the insuring companies, Western Adjustment is repaid such expenses."

There is very little, if any, true agency relationship here, but rather one of independent contractual service to obtain a particular result, namely, the adjustment of insurance losses, and that on a basis which the appellant's employees (adjusters) personally think reasonable and correct. An independent contractor agrees to accomplish certain results, (in this case the adjustment of loss claims) but such contractor is not controlled in the details, manner, or particular method of performing the task. An agent, on the other hand, is sub-

ject to the control of the principal with respect to the details of the work. 2 Am. Jur., Agency, §8, p. 17; *Gross Income Tax Div.* v. *Ft. Pitt Bridge Wks.* (1949), 227 Ind. 538, 86 N. E. 2d 685, 87 N. E. 2d 721.

The trial court reasonably could have found from the evidence that appellant was an independent contractor. The appellant had the burden of making out an affirmative case. The finding of the trial court necessarily negatived the existence of an agency or trusteeship of the receipts involved similar to that which was found to exist in the two cases just considered. There was a basis for the finding of the trial court that the receipts were taxable contrary to appellant's theory. The decision was not contrary to law.

Judgment affirmed.

Achor, Bobbitt, Emmert and Landis, JJ., concur.

NOTE.—Reported in 142 N. E. 2d 630.