INDIANA DEPARTMENT OF REVENUE, GROSS INCOME TAX DIVISION, Appellant (Defendant Below),

v.

WATERFILED [sic] MORTGAGE COMPANY, INC., Appellee (Plaintiff Below).

No. 3–279A42.

Court of Appeals of Indiana, Third District.

Feb. 20, 1980.

Rehearing Denied March 20, 1980.

Theodore L. Sendak, Atty. Gen., Charles D. Rodgers, Deputy Atty. Gen., Indianapolis, for appellant.

Howard L. Chapman, Patrick G. Michaels, Bonahoom, Chapman & McNellis, Fort Wayne, for appellee.

STATON, Judge.

Waterfield Mortgage Company, Inc. (Waterfield) filed a complaint seeking a refund of certain gross income taxes it had paid. The trial court concluded that Waterfield was entitled to the refund and entered judgment accordingly. The State appeals.

We affirm.

### I.

Waterfield is engaged in the mortgage banking business. It originates loans with the intention of selling them to permanent investors. The funds for such loans are initially advanced to Waterfield by any one of a number of banks. After the mortgage loan is closed by Waterfield, the mortgage is assigned to the particular bank that advanced the funds. This transaction is referred to as "warehousing" and the bank involved is the "warehouse bank." For a fee, Waterfield continues to service the mortgages after they have been warehoused. Waterfield's duties in this regard consist primarily of collecting the mortgage payments from the individual mortgagors and transferring those payments, including the interest portions thereof, to the appropriate bank. Waterfield does not remit the

mortgagors' checks to the banks. Rather, it deposits the checks in a custodial account. Then, at the end of each billing period, Waterfield writes each bank a check for the total amount due that bank. · Waterfield services some sixty thousand mortgages per month in this manner.

At issue is whether the interest portion of the payments collected by Waterfield for the warehouse banks and subsequently transferred to those banks constitutes gross income to Waterfield. The trial court concluded that· Waterfield is merely acting as an agent for the banks in collecting the payments and, therefore, that the payments do not constitute gross income to Waterfield. The State concedes that payments collected by an agent for its principal do not constitute income to the agent, but challenges the court's finding that Waterfield is, in fact, acting as an agent.

■ We note initially that a trial court's judgment is clothed with a presumption that it is correct and that the appellant, in this case the State, has the burden of establishing error. *Indiana Broadcasting Corp. v. Star Stations* (1979), Ind.App., 388 N.E.2d 568. Furthermore, we must accord the trial court due regard for its opportunity to evaluate the evidence on factual issues, and we must uphold its findings unless they are clearly erroneous. *American Family Mut. Ins. Company v. Bentley* (1976), Ind.App., 352 N.E.2d 860; Ind.Rules of Procedure, Trial Rule 52(A).

Most of the servicing contracts between Waterfield and the warehouse banks are written contracts. Each of the written contracts contains a clause substantially similar to the following:

> "Bank hereby appoints Waterfield as Bank's agent, without a right to compensation and terminable at Bank's will, to service all mortgage loans in which Bank has an interest hereunder. Bank is entitled to all payments of principal and interest on such mortgage loans and may at any time notify the mortgagor to make payment directly to Bank or its agent; and each Customer shall account therefore [*sic*] to Bank and pay the same to Bank upon demand by Bank. . . . "

■ Thus, the contracts themselves profess to establish an agency. We are not precluded, of course, from looking beyond the mere verbiage of the contracts to ascertain the true nature of Waterfield's relationship with the banks. *Meridian Mortg. Co., Inc. v. State* (1979), Ind.App., 395 N.E.2d 433.

■ Among the indicia of an agency is the right to control. *Western Adjust. & Insp. Co. v. Gross Income Tax Div.* (1957), 236 Ind. 639, 142 N.E.2d 630. Although the servicing contracts purport to confer upon the banks the right to control the collection procedures used by Waterfield and the right to order the individual mortgagors' payments to be made directly to them, the State argues that the banks do not, in fact, possess such rights. The State cites the banks' failure to exercise any control over the collection procedures in support of its argument. The trial court could reasonably have concluded, however, that the banks' failure to exercise control is merely an indication of their satisfaction with the procedures used and results obtained by Waterfield.

The State also attempts to disprove the agency theory by stressing that Waterfield, rather than remitting the mortgagors' checks directly to the banks as they are received, makes one monthly payment to each bank. We do not believe Waterfield's method of payment is inconsistent with the trial court's finding. As indicated earlier, Waterfield receives some sixty thousand mortgage payments a month. Testimony by several witnesses disclosed that, because of that volume, it would be virtually impossible to remit the payments directly to the banks. Furthermore, Waterfield's duties include following up on dishonored checks and delinquent accounts. It would be rather inefficient and would, in fact, defeat the purpose of having a servicing agent if Waterfield forwarded the mortgagors' checks to the banks only to have the banks return the dishonored checks to Waterfield for further proceedings.

Finally, we note that the entire amount received from the mortgagors is, in fact, subsequently transmitted to the banks. Additionally, the interest portion of those payments is reported by the banks as gross income.

The State has not shown that the trial court's finding is clearly erroneous.

## II.

■ All of the mortgages originated by Waterfield are insured by either the Veterans Administration, the Federal Housing Administration, or a private mortgage insurance company. Prior to issuing the insurance, these organizations require a credit report on the proposed borrower. The cost of the credit report is charged to the proposed borrower. When the proposed borrower executes the loan application with Waterfield, Waterfield informs him that he is required to deposit ten dollars for the credit report.

The deposits are placed by Waterfield in its checking account. Waterfield maintains a separate ledger account designated as a credit report account. That account is not used for any purpose other than to record the deposits and the corresponding payments to the credit reporting company. When a loan is closed, the closing statement reflects the cost of the credit report as one of the borrower's closing costs. The closing statement also reflects a setoff, representing the borrower's deposit, against the credit report charge.

The State argued below that the credit report deposits constitute receipts to Waterfield within the meaning of the Indiana Gross Income Tax Act. The trial court found that Waterfield receives the deposits as an agent for the loan applicants and, accordingly, that such sums are not subject to the Indiana Gross Income Tax Act.

The State has failed to show that that finding is clearly erroneous. Waterfield is obligated to transfer the deposits to the credit reporting company; all of the deposits are, in fact, so transferred. Waterfield is merely a conduit for the deposits.

The judgment of the trial court is affirmed.

GARRARD, P. J., and HOFFMAN, J., concur.