**BLOOMINGTON COUNTRY CLUB**
d/b/a Quail Ridge Country
Club, Petitioner,

v.

**STATE of Indiana, DEPARTMENT OF REVENUE, Respondent.**

No. 49T05–8807–TA–00037.

Indiana Tax Court.

Aug. 21, 1989.

Joseph D. O'Connor, III, Bunger, Robertson, Kelley & Steger, Bloomington, for petitioner.

Linley E. Pearson, Atty. Gen. by Marilyn S. Meighen, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

This is an appeal from the Indiana Department of Revenue's denial of Bloomington Country Club's (Club) protest. The Department assessed sales tax and adjusted gross income tax on Club gratuities during the assessment periods. Assessment was made pursuant to IC 6–2.5–4–1(e) and IC 6–2.1–1–2(a)(3).

The parties have stipulated as follows:
1. The Club is an Indiana not-for-profit private club located in Bloomington, Indiana.
2. The relevant time period is tax years 1983, 1984, and 1985.
3. During the relevant time period, the Club operated a restaurant and bar for its members.
4. Approximately 30 years ago, the Club's Board of Governors established a policy to automatically add a 15% service charge to the charge for food and beverage served to members of the Club and their guests. This policy was created to generate additional revenue for the Club, and the Club received the service charge.
5. In February of 1984, the Club's Board of Governors changed the above mentioned policy. The 15% automatic charge was continued but the new policy stated that the 15% service charge was to be called a gratuity and was passed on to the wait staff.
6. During the relevant time period, the wait staff were employees of the Club.
7. During the relevant time period, the Board of Governors was elected by the membership.

8. During the relevant time period, members of the Club received a monthly billing for food and beverage charges. The 15% gratuity was automatically added to the charge for food and beverage, and was separately stated on the member's monthly bill.

9. A club member who was not satisfied with the food and beverage service could contact the Club office regarding the unsatisfactory service. A club member could reduce any part of, or all of, the 15% service charge if he deemed the service less than adequate. The Club would occasionally tear up the complete ticket including food, beverage and the 15% gratuity charge.

10. A club member could also increase the 15% gratuity if service was good.

11. During the relevant time period, no collection activities were instituted against members for the nonpayment of food and beverage charges, including the automatic 15% gratuity.

12. During the relevant time period, the Club did not have a policy prohibiting members from terminating membership unless all outstanding bills, including the automatic 15% gratuity attributable to the sale of food and beverage, had been paid.

13. During the relevant time period, the automatic 15% gratuity was applied to the payment of the minimum wages due the Club's wait staff under law.

14. Revenue conducted a tax audit on the Club for tax years 1983, 1984, and 1985.

15. For the tax year 1983, the Club reported the 15% automatic gratuity as subject to income tax using a tax rate of 1.30%. As a result of the audit, Revenue reclassified the tax rate on the 15% automatic gratuity to .325% for income tax purposes. The audit also taxed the 15% automatic gratuity for sales tax purposes at a tax rate of 5%.

16. For the tax years 1984 and 1985, the Club reported a portion of the 15% automatic gratuity for income tax purposes, using the 1.30% tax rate. As a result of the audit, Revenue assessed all of the 15% automatic gratuity for income tax purposes, and reclassified the tax rate on the total amount of 15% gratuities to .325%. Revenue also taxed the 15% automatic gratuity for sales tax purposes at a tax rate of 5%.

17. The Club's protest regarding the above assessments were denied by Revenue's Letter of Findings.

18. This case is an appeal of Revenue's final tax determination concerning the assessment of sales tax and income tax on the 15% gratuity collected by the Club.

## I. SALES TAX

Bloomington Country Club contends that under this court's analysis in *Summit Club, Inc. v. Indiana Department of State Revenue* (1988), Ind. Tax, 528 N.E.2d 129, service charges collected by Bloomington Country Club and paid out to service employees should not be taxed. The Department contends that the distinguishing factor between *Summit Club* and the case at bar is that Bloomington Country Club used service charges to bring wages up to the minimum wage standard.

In *Summit Club*, the service charge was automatically added to the food and beverage charges. The service charge was collected by the Club and remitted to the service staff. The Club's tipping policy was adopted for the dual purpose of increasing each individual member's convenience and establishing a generally accepted tipping standard. A member who was not satisfied with service could refuse to pay the service charge. If the member was well satisfied with the service, a higher percentage could be paid. 528 N.E.2d at 130. Members of Bloomington Country Club pay the same type of service charge.

This court held that Summit Club was not liable for tax on service charges collected and remitted to service staff. In holding for Summit Club, this court cited to *Big Foot Country Club v. Wisconsin Department of Revenue* (1975), 70 Wis.2d 871, 235 N.W.2d 696, which allowed exemption of add-on service charges on the basis that the charges were a mere codification by the

Club's by-laws of the social custom of tipping. Tips were not gross retail income to the Club. The Department points to additional language in *Big Foot* that it contends supports the assessment against Bloomington Country Club. The Wisconsin Court opined:

> This would be a different case if the record showed that the bonus [accumulated service charges] was used to bring the wages paid to service help up to a minimum wage level or was used to make the total yearly wages paid to the club's service employees competitive with the wages paid to other service employees in similar employment in the area. 235 N.W.2d at 699.

In order for the tax to be assessed under IC 6–2.5–4–1(e), the service charges must be part of the gross retail income of Bloomington Country Club. The Department contends that in the case at bar the service charges are gross retail income to the Club rather than exempt gratuities under the *Summit Club* rationale. The court disagrees.

Under the *Big Foot dicta* and the cases cited by the Department, service charges are taxable when employers collect the charges and pay them out as wages or bonuses. However, a service charge or gratuity is not taxable whenever it is directly passed on to the employee that the club member has designated. *See* Annotation, *Applicability of Sales Tax to "Tips" or Service Charges Added In Lieu of Tips,* 73 A.L.R.3d 1226 (1976). The Department contends that pursuant to Stipulation 13, Bloomington Country Club used the gratuity to pay minimum wages, and thus the gratuities became gross retail income to the Club. The language of Stipulation 13 is somewhat misleading because it can be read to indicate that service charges collected by the Club were retained and paid out in the form of wages. This reading of the stipulation, however, does not comport with the facts of the case. After February of 1984, Bloomington Country Club did not pool the charges and pay them out as wages or bonuses; it collected the charges and remitted them directly to the specific employee to whom the service charge was paid by the club member. Distribution by the Club was necessitated by the fact that club members did not leave cash tips on tables.

When the Club states that the "gratuity was applied to the payment of the minimum wages due the Club's wait staff under law", it is not stating that the minimum wage is paid through gratuities collected. The minimum wage due tipped employees is paid out of the general income of the club. In Stipulation 13, the Club is merely acknowledging that, under Federal statute, tips are relevant to the amount of wages employers must pay. *See* 29 U.S.C. 203(m). Employers of tipped employees are not required to pay as much in wages as other employers because tips are deemed to be an increase in wages. In this manner, tips or gratuities are "applied to the payment of minimum wages." Tips remitted directly to employees by the employer are not wages but are applied toward the calculation of the minimum wage.

This case is distinguishable from the cases cited by the Department. This court's analysis in *Summit Club* is applicable to this case and the Department's assessment is incorrect for the period beginning in February, 1984.

## II. GROSS INCOME TAX

The Department assessed gross income tax to Bloomington Country Club on the service charges collected and remitted to the service staff. IC 6–2.1–1–2(a)(3) defines "gross income" as all the gross receipts a taxpayer receives from the sale or transfer of property. IC 6–2.1–1–2(b) states that there is no deduction for labor costs.

 Bloomington Country Club is not subject to the tax because it was merely acting as a conduit to pass along the service charges to service personnel. A taxpayer is not subject to gross income tax on receipts received on behalf of a third person. *United Artists Theatre Circuit, Inc. v. Dep't of State Revenue, Gross Income Tax Division* (1984), Ind.App., 459 N.E.2d 754, 756. The existence of an agency rela-

tionship, wherein the principal acts as a conduit, is a question of fact. *Dep't of Treas. v. Ice Service* (1942), 220 Ind. 64, 68, 41 N.E.2d 201, 203. As stipulated by the parties, Bloomington Country Club collected the gratuity and passed it along to the service employees (beginning in February of 1984).

IT IS ORDERED AND DECREED that, from the period beginning in February of 1984 through the remainder of the audit period, Bloomington Country Club's motion for summary judgment is granted. The Department's motion, as it pertains to the aforementioned period, is denied. The Department's motion is granted for the audit period prior to February, 1984. The Department is directed to calculate the correct tax, based on this opinion, and issue appropriate assessment notices to the Club. The parties are further directed to report to the court when such reassessment and payment is accomplished.

ORDERED this 21st day of August, 1989.