UNIVERSAL GROUP LIMITED; Universal Flavors International, Inc.; Universal Flavor Corporation; Universal Flavors of Indiana, Inc.; Universal Flavors of New Jersey, Inc., Hurty–Peck & Company; Blanke Baer/Bowey Krimko Corporation; and Cock'n Bull, Ltd., Petitioners,

v.

INDIANA DEPARTMENT OF STATE REVENUE, Respondent.

No. 49T10–9108–TA–00039.

Tax Court of Indiana.

Nov. 4, 1994.

554

Barton T. Sprunger, Mark J. Richards, Ice Miller Donadio & Ryan, Indianapolis, for petitioners.

Stephen H. Paul, Brian S. Fennerty, Baker & Daniels, Indianapolis, for amicus curiae Ind. Legal Foundation, Inc.

Pamela Carter, Atty. Gen., David A. Arthur, Deputy Atty. Gen., Indianapolis, for respondent.

## ON PETITION FOR REHEARING

FISHER, Judge.

The Petitioners, Universal Group Limited, Universal Flavors International, Inc., Universal Flavor Corporation, Universal Flavors of Indiana, Inc., Universal Flavors of New Jersey, Inc., Hurty–Peck & Company, Blanke Baer/Bowery Krimko Corporation, and Cock'n Bull, Ltd. (collectively the affiliated corporations) seek rehearing[1] and ask the

court to overrule its final decision in this matter, *Universal Group Limited v. Indiana Department of State Revenue* (1994), Ind. Tax, 634 N.E.2d 891 (*UGL II*). The Respondent, the Indiana Department of State Revenue (the Department) also seeks rehearing, asking the court to clarify the discussion in Issue II of *UGL II*. Neither party challenges the court's earlier denial of summary judgment to both the affiliated corporations and the Department in *Universal Group Limited v. Indiana Department of State Revenue* (1993), Ind.Tax, 609 N.E.2d 48 (*UGL I*). As *amicus curiae*, the Indiana Legal Foundation, Inc., has filed a brief in support of the affiliated corporations' position.

This appeal is the latest in a line of cases from Indiana courts to address the taxability, under the gross income tax act,[2] of income received in an agency capacity within the context of related business organizations. Similar to their predecessors in the earlier cases, the affiliated corporations centralized administrative tasks:

> To avoid duplicating expenses, the affiliated corporations designated one or more corporations to act on behalf of the other corporations in performing certain centralized functions on a non-profit basis. The centralized functions included general accounting and data processing, general administration, customer service accounting, laboratory testing, sample production, international development, and sales and sales-related services. Expenses for these centralized functions were allocated among the affiliated corporations on the basis of formulas designed to approximate each entity's use and benefit from the services. Reimbursement for expenses incurred was generally accomplished by accounting entries, but prior to 1984, checks were sometimes issued between the corporations.

*UGL I,* 609 N.E.2d at 49.

In *UGL I,* the court denied summary judgment to both the affiliated corporations and the Department on the question of whether "reimbursements for expenses incurred by

1.  Ind. Appellate Rule 18(B).

2.  IND.CODE 6–2.1.

the affiliated corporations under certain expense sharing arrangements [constituted] receipts of gross income subject to taxation." *UGL I,* at 49. The court denied summary judgment "[b]ecause a genuine issue of material fact exists regarding whether the reimbursement transactions represent 'pass throughs' of income...." *Id.* at 55. In *UGL II,* the court held that "the requisite degree of control for an agency relationship is not present in the [affiliated corporations'] cost sharing agreements.... [Therefore,] because there is no agency relationship between the affiliated corporations[,] the reimbursement transactions do not constitute 'pass through' income, and are gross income subject to taxation." *UGL II,* 634 N.E.2d at 895. The affiliated corporations now claim that *Indiana Department of State Revenue v. Marsh Supermarkets, Inc.* (1980), Ind. App., 412 N.E.2d 261, is dispositive of the case and requires the court to enter judgment for the affiliated corporations.

### ISSUES

The affiliated corporations' petition for rehearing raises the following issues:

I. Whether *Marsh* states the controlling law on this matter.

II. Whether the Department's regulation 45 I.A.C. 1–1–54 is a valid statement of the controlling law.

III. Whether the reimbursement transactions at issue are subject to gross income tax.

IV. Whether today's decision should be applied only nonretroactively.

### DISCUSSION AND DECISION

#### THE DEPARTMENT'S PETITION

■ Initially, the court must dispose of the Department's petition seeking clarification of Issue II in *UGL II.* Issue II addressed the deductibility of transactions between and among corporations filing a consolidated gross income tax return.

IND.CODE 6–2.1–4–6 provides in pertinent part:

(a) Except as provided in subsections (b) and (c), each taxable year an affiliated group of corporations filing a consolidated return pursuant to IC 6–2.1–5–5 is entitled to a deduction from the gross income reported on such a return. The amount of the deduction equals the total amount of gross income received during the taxable year from transactions between members of the group that are incorporated or authorized to do business in Indiana.

In enacting this statute, "the legislature ... contemplated the gross income tax consequences of transactions between corporations, though not necessarily transactions conducted within the scope of an agency arrangement." *UGL I,* 609 N.E.2d at 54. In the present case, Universal Flavors International, Inc., Universal Flavor Corporation, Universal Flavors of Indiana, Inc., and Universal Flavors of New Jersey, Inc. are all either incorporated in or authorized to do business in Indiana, and are accordingly to be included in the Indiana consolidated gross income tax return for the years in issue. *See* IND.CODE 6–2.1–5–5. Therefore, the intercompany transactions among those corporations are deductible under IC 6–2.1–4–6.

#### I

In *UGL I,* the court traced the history of the four Indiana cases directly relevant to the affiliated corporations' claim for refund: *Department of Treasury v. Ice Service, Inc.* (1942), 220 Ind. 64, 41 N.E.2d 201; *Gross Income Tax Division v. Indiana Associated Telephone Corp.* (1948), 118 Ind.App. 669, 82 N.E.2d 539; *Western Adjustment & Inspection Co. v. Gross Income Tax Division* (1957), 236 Ind. 639, 142 N.E.2d 630; and *Marsh.* The lesson of *Ice Service, Associated Telephone,* and *Western Adjustment,* as discussed in *UGL I,* is that there is no gross income tax liability for an agent when: 1) the agent, acting in an agency capacity, receives income in which the agent has no right, title, or interest, and; 2) the agent subsequently "passes through" the income to a principal or a third party. *UGL I,* 609 N.E.2d at 51–54. Alternately, if the income constitutes "reimbursements to [the] agent for amounts advanced or paid to third parties [and therefore] substantively represent[s] 'pass throughs' of income [it is likewise] ... not taxable to the agent." *Id.,* at 54. On the

other hand, "reimbursements of a taxpayer's *own expenses* are receipts of gross income to the taxpayer ..." *Id.*[3] (emphasis added). Where *Marsh* falls within this scheme, however, remains an open question.

In *Marsh,* "a parent corporation contractually agreed to act as an agent for two wholly owned subsidiaries in performing unspecified personnel functions. The subsidiaries in turn reimbursed the parent for its expenses." *UGL I,* 609 N.E.2d at 52. Nowhere in *Marsh,* however, did the court of appeals "explicitly analyze the beneficial interest in the reimbursements, that is, whether the reimbursements were for advances or payments to third parties, thus substantively representing 'pass throughs' of income." *Id.* Furthermore, although the *Marsh* opinion contains the trial court's Ind. Trial Rule 52 findings of fact and conclusions of law, these do not reveal whether the subsidiaries' reimbursements to the parent were for the parent's own expenses or for amounts the parent advanced or paid to third parties on behalf of the subsidiaries. *See UGL I,* 609 N.E.2d at 52, n. 7; *Marsh,* 412 N.E.2d at 262–64, n. 1.

If the reimbursements to the parent simply constituted reimbursement of the par-

ent's own expenses, *Marsh* is an inaccurate statement of the law as developed in *Ice Service* and *Associated Telephone* and crystallized in *Western Adjustment.* If, on the other hand, the reimbursements were substantive "pass throughs" to reimburse the parent for payments it made to third parties on behalf of the subsidiaries, *Marsh* is correct.[4] At this late date, however, it is impossible to determine the nature of the reimbursements.[5]

To the extent *Marsh* is incorrect, the court will not follow it.[6] In any event, it does not compel judgment in favor of the affiliated corporations.

## II

Section 1 of the *Restatement of Agency* defines agency as "the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his *control,* and consent by the other so to act." (Emphasis added).[7] Our supreme court adopted this definition in full in *Ice Service,* 220 Ind. at 67–68, 41 N.E.2d at 203, and in the more than half a century since, Indiana courts have adhered to it. *See, e.g., Western Ad-*

---

3. For a full discussion of these cases, see *UGL I,* 609 N.E.2d at 51–53.

4. The lesson of *Western Adjustment* holds true outside the context of related corporations, as well. For example, in *Indiana Department of Revenue v. Waterfiled (sic) Mortgage Co., Inc.* (1980), Ind.App., 400 N.E.2d 212, *trans. denied,* the taxpayer was a mortgage originator. After closing a mortgage, the company would sell the mortgage to a bank and then act as the bank's collection agent, receiving the mortgage payments and passing them through to the proper bank. There was no affiliation between the mortgage company and the banks, but the company, acting as agent and passing income through to the banks, was not liable for gross income tax on the pass through amounts. For a discussion of related authorities, see *UGL I,* 609 N.E.2d at 53.

5. Lead *amicus* counsel in the present case was also counsel for the taxpayer in *Marsh.* Along with his post-trial amicus brief, he has filed the trial court transcript from *Marsh.* The court has refrained from reviewing the transcript for two reasons.
   First, to resolve the present appeal, the court need look only to *Ice Service, Associated Telephone,* and *Western Adjustment.* Regardless of

whether *Marsh* is correct or incorrect, it is not dispositive. Second, counsel has not offered the transcript to show claim or issue preclusion, to enforce a foreign judgment, or for any other typical purpose. Instead, he offers it to explain the holding in *Marsh.* Because the transcript is not necessary to decide this appeal, the court need not resolve the transcript's propriety. Suffice it to say, however, it strikes the court as inappropriate to second-guess reported precedent by going behind that precedent to review underlying facts.

6. *Marsh* is a decision with holdings on a number of different issues, and this court has looked to *Marsh* on some of those issues. *See Bethlehem Steel Corp. v. Indiana Dep't of State Revenue* (1992), Ind.Tax, 597 N.E.2d 1327, 1333, *aff'd* (1994), Ind., 639 N.E.2d 264; *Monarch Beverage Co. v. Indiana Dep't of State Revenue* (1992), Ind.Tax, 589 N.E.2d 1209, 1213, 1214. Today's decision does not affect either *Marsh's* resolution of those issues or this court's resolution of those issues.

7. Section 1(1) of the *Restatement (2d) of Agency* makes slight changes, changing the word "relationship" into "relation" and modifying "relation" with "fiduciary."

*justment,* 236 Ind. at 648–49, 142 N.E.2d at 634; *Gross Income Tax Division v. Fort Pitt Bridge Works* (1949), 227 Ind. 538, 546, 86 N.E.2d 685, 689; *Delk v. Bd. of Comm'rs* (1987), Ind.App., 503 N.E.2d 436, 440; *United Artists Theatre Circuit, Inc., v. Indiana Dep't of State Revenue* (1984), Ind.App., 459 N.E.2d 754, 758; *Lafayette Bank & Trust Co. v. Price* (1982), Ind.App., 440 N.E.2d 759, 761–62; *Lewis v. Davis* (1980), Ind.App., 410 N.E.2d 1363, 1366; *Waterfiled (sic),* 400 N.E.2d at 214; *Mooney–Mueller–Ward, Inc. v. Woods* (1977), 175 Ind.App. 302, 307, 371 N.E.2d 400, 403; *Minniear v. Estate of Metcalf* (1972), 153 Ind.App 213, 215, 286 N.E.2d 700, 702, *trans. denied.*

The Department, however, has not adhered to that definition. It has chosen to define agency as "a relationship which results from the manifestation of consent by one person to another authorizing the other to act on his behalf and subject to his *complete* control, and consent by the other to so act." 45 I.A.C. 1–1–54(1) (emphasis added). From the addition of this single adjective came the difficulty the parties and the court faced in resolving the present appeal.

In *UGL II,* the court focused directly on the question of control, *i.e.,* "complete control," rather than on the dual questions of agency and beneficial interest in the income at issue. The court held that the affiliated corporations' arrangement did not give the "principal" affiliates sufficient control to constitute an agency. *UGL II,* 634 N.E.2d at 895. The court then concluded that, by definition, the absence of agency meant the income at issue could not be considered a "pass through" and was therefore subject to gross income tax. *Id.* To be outside the gross income tax, there must be both agency and pass through, actual or substantive. *UGL I,* 609 N.E.2d at 54. As the preamble to 45 I.A.C. 1–1–54 itself states, "[t]axpayers are not subject to gross income tax on income they receive in an agency capacity. However, before a taxpayer may deduct such income in computing his taxable gross receipts, he *must meet two (2) requirements.*" (Em-

phasis added). *UGL II,* though, implies that the existence of agency leads necessarily to the pass through nature of income. This is an inaccurate implication.

▌ Indiana employs the *Restatement* definition of agency, which requires an agent to be under the control of the principal. Our courts have never wavered from this definition, in gross income tax cases or any other case. It does not lie with the Department to promulgate a regulation in excess of, or contrary to, the law. *See Johnson County Farm Bureau Coop. Ass'n. v. Indiana Dep't of State Revenue* (1991), Ind.Tax., 568 N.E.2d 578, 586–87, *aff'd* (1992), Ind., 585 N.E.2d 1336; *Hutchison v. State Bd. of Tax Comm'rs* (1988), Ind.Tax, 520 N.E.2d 1281, 1283. This requirement applies both to regulations applying statutes, as in *Johnson County* and *Hutchison,* and to regulations applying common law. A regulation is invalid if it is "in conflict with the state's organic law, or antagonistic to the *general law* of the state or 'opposed to the fundamental principles of justice, or inconsistent with the powers confer[r]ed'" upon the agency promulgating the regulation. *Potts v. Review Bd. of Indiana* (1982), Ind.App., 438 N.E.2d 1012, 1015–16 (emphasis added) (citing and quoting *Blue v. Beach* (1900), 155 Ind. 121, 131, 56 N.E. 89, 93). *See generally Bielski v. Zorn* (1994), Ind.Tax, 627 N.E.2d 880; *Miller v. Gibson County Solid Waste Management Dist.* (1993), Ind.Tax, 622 N.E.2d 248 (both discussing limits on agency authority in general). An invalid regulation is entitled to no weight. *Johnson County,* 568 N.E.2d at 586.

▌ The general law [8] of this state requires an agent [9] to be under the control of its principal. To the extent the language in 45 I.A.C. 1–1–54 requiring "complete control" adds an additional element, the regulation is invalid. To make the regulation accurately state the law, however, the court need not invalidate it in its entirety: only the offensive portion need be stricken. Therefore, the court holds the word "complete" in 45 I.A.C.

8. *See Black's Law Dictionary* 250–51 (5th ed. 1979) (defining and discussing common law).

9. In the present context of an agent's liability for gross income tax, an agent also includes a trustee

for distribution of pass through funds. *See UGL I,* 609 N.E.2d at 52, n. 6 and accompanying text.

1–1–54 null and void.[10] *See Emmis Publishing Corp. v. Indiana Dep't of State Revenue* (1993), Ind.Tax, 612 N.E.2d 614, 622–23 (invalidating a Department regulation in part).

### III

■ Having put *Marsh* and 45 I.A.C. 1–1–54 into proper perspective, the court now turns to the facts of the affiliated corporations' arrangements. Simply put, and assuming *arguendo* the arrangements created agency relationships, there was no pass through. The reimbursements to the corporations that performed the administrative tasks were reimbursements for those corporations' own expenses, such as paying their own employees' wages, not for monies advanced to third parties.

Indeed, the entire beneficial interest in the reimbursements lies with the parties receiving the reimbursements. That these are true reimbursements without any profit to the recipient is irrelevant: "[t]he gross income tax is applicable regardless of any profit being involved." *Western Adjustment*, 236 Ind. at 645, 142 N.E.2d at 633. Whether these transactions should be taxable, as a matter of tax policy, is a matter for the legislature, not this court. *See id.*

### IV

■ Anticipating today's ruling, the *amicus curiae* asks the court to apply the ruling prospectively only because taxpayers have relied on *Marsh* for fourteen years. The argument supporting the request is cogent and well-made, but the law in this area was settled by our supreme court in *Western Adjustment* twenty-three years before the court of appeals ruled in *Marsh*. To decide "when not to apply a case retroactively ... 'the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed.'" *Bayh v. Sonnenburg* (1991), Ind., 573 N.E.2d 398, 406

(quoting *Chevron Oil Co. v. Huson* (1971), 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296), *cert. denied* (1992), 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 415.

Today's decision does not establish a new principle of law. On the contrary, today's decision follows the clear command of *Western Adjustment:* for receipts to be beyond the reach of the gross income tax, there must be both agency and pass through. *Marsh* either accurately or inaccurately applies the law, but regardless, it is not the ruling precedent. *Western Adjustment* is the ruling precedent, and there is accordingly no reason to apply today's decision prospectively only.

### CONCLUSION

The affiliated corporations' cost sharing arrangements, whether or not they create agency relationships, do not include pass throughs of income, either actual or substantive, to reimburse for payments to third parties. Instead, the corporations receiving the reimbursements have full beneficial interest in the reimbursements and retain them. The reimbursements are therefore subject to gross income tax. For the corporations properly included in the consolidated return under I.C. 6–2.1–5–5, the reimbursements are deductible under I.C. 6–2.1–4–6.

Accordingly, for all the foregoing reasons, the court now affirms the judgment entered pursuant to the opinion in *UGL II* on May 2, 1994. The court also now withdraws, sets aside, and vacates the opinion in *UGL II* and strikes the word "complete" from 45 I.A.C. 1–1–54.

---

**10.** 45 I.A.C. 1–1–54 also states that "[c]haracteristic of agency is the principal's right to complete and continuous control over the acts of the agent throughout the entire performance of the contract." The word "complete," as used here, is also null and void, as is any language in 45 I.A.C. 1–1–54 that departs from the law.