**INDIANA STATE DEPARTMENT OF REVENUE, INCOME TAX DIVISION,** Appellant (Defendant Below),

v.

**VALLEY FINANCIAL SERVICES, INC.,** Appellee (Plaintiff Below).

No. 3–1281A335.

Court of Appeals of Indiana, Third District.

May 19, 1982.

Rehearing Denied June 18, 1982.

Linley E. Pearson, Atty. Gen., Alembert W. Brayton, Ted J. Holaday, Deputy Attys. Gen., Indianapolis, for appellant.

Glenn L. Duncan, Thorne, Grodnik & Ransel, Elkhart, for appellee.

HOFFMAN, Presiding Judge.

The Indiana State Department of Revenue appeals from a judgment in favor of Valley Financial Services, Inc., on Valley's claim for a refund of intangible taxes. The dispositive issues concern the trial court's interpretation of various transactions between Valley Financial Services, Inc. and Valley Bank and Trust Company.

The Department served Valley a notice of tax due in the amount of $35,228.93. Valley paid the tax and then filed a written protest in lieu of an administrative hearing in which it objected to the tax notice. Valley then filed a claim for refund of tax, interest, and penalty for the tax years 1976, 1977, and 1978. This claim was denied by the Department on September 13, 1979. Valley filed a verified petition for refund of state intangibles tax in the Elkhart Circuit Court on October 5, 1979.

Trial of this matter was held on February 10, 1981. On July 21, 1981 the trial court entered judgment in favor of Valley with the following findings:

"1. Plaintiff is an Indiana corporation with its principal place of business located in Elkhart County, Indiana.

2. Plaintiff, Valley Financial Services, Inc., (hereinafter referred to as 'Valley') owns in excess of 80% of the outstanding, authorized and issued shares of stock of Valley Bank and Trust Company (hereinafter referred to as 'Bank') located in Mishawaka, Indiana, between said two entities.

3. On or about August 7, 1979, Valley, petitioner in this cause, received a notice of tax due number 0135709708 issued to Valley by the Department of Revenue, Income Tax Division (hereinafter referred to as 'Department').

4. Notice number 0135709708 indicated a tax, interest, and penalty due the Department by Valley in the amount of $35,228.93 which sum Valley subsequent to August 7, 1979, paid and delivered to the Department.

5. Valley pursuant to statute protested the original assessment by filing with the Department a written protest in lieu of an administrative hearing.

6. Valley having paid the tax filed a claim for refund, Form No. IT–843 for tax years 1976, 1977, and 1978 claiming a refund for tax, interest and penalty.

7. On or about September 13, 1979, the Department denied Valley's claim for refund and issued notice of said denial.

8. Valley operates certain loan accounts which contain loans known as participation loans.

9. The Department assessed Valley $29,024.79 tax of which $21,897.69

represents tax on the accounts known as participation loans. In addition to said tax, a prorata portion of interest and penalty, to-wit: $5,111.41 is attributable to said participation loans.

10. Bank allowed other institutions in addition to Valley to participate in loans. All participation loans were handled alike, no matter who the participant was. Even though slightly different documents were used on some participation loans in the Account, all the loans in the Account were also handled alike by Bank. Very shortly after the origination of the loan by Bank, (generally within one day) the participation documents were signed. The interest paid on the participation loan was linked to the role in Bank's loan to its customers. Bank continued to collect the payments on the loan. All funds collected were transmitted to Valley or other participant until the participant arrangement was terminated or the participant's interest was paid in full.

11. Valley has no control as to whom Bank loans money.

12. All interest and principal payments are made directly to Bank and not to Valley.

13. All collateral documents, i.e. mortgages, security agreements, financing statements, corporate resolutions authorizing borrowing list Bank as creditor and made no mention of Valley.

14. The promissory note executed by the customer-borrower is executed and delivered to Bank and indicates a promise to repay Bank. Said note which is a negotiable instrument is kept in the possession of Bank entirely within the control of Bank.

15. Only Bank can release security and only Bank can cancel or transfer the promissory note.

16. The preloan interview and loan application is processed by Bank and is conducted at Bank not by Valley.

17. The disbursement to the customer-borrower is made by Bank on a Bank check. No funds are disbursed to said customer-borrower by Valley.

18. Valley has no involvement and exercises no control over the decision to make loans to Bank customers either as to when or in what amounts.

19. Most of the time the customer-borrower does not know of Valley's involvement.

20. On occasion, Valley requires Bank to repurchase the participation or in essence pay off the loan by Valley to Bank. Such action by Valley does not cause Bank to require the customer-borrower to pay off his loan.

21. Bank, not Valley, reports to the customer-borrower somewhere near the third week of each calendar year the amount of interest paid by said customer-borrower to Bank for sums borrowed during the previous year. Said report indicates all interest paid by the customer-borrower including any amounts which might have been sold off on participation loans to Valley or other financial institutions. Said report does not indicate any payment of interest to Valley or any other entity but Bank.

22. Bank's policy has always been to repay the principal due the financial institution which has purchased the participation before reducing principal owed itself or to state it in other terms, the policy has been one of last in, first out with the participation purchasers being considered the last one in.

23. Bank makes the loans and for the most part disburses the funds to the commercial borrower prior to receiving any funds from Valley.

24. Valley actually issues a check to Bank when it purchases a participation in a loan and does not issue a check to the customer-borrower.

25. In all instances, money going from Valley goes to Bank after the loan is made to the customer-borrower of Bank.

26. Valley does individualize on its account records the participation loans and does use the name of the Bank customer-borrower for that purpose. This individualization is necessary due to difference in interest rates involved in the different accounts.

27. Bank makes payment of interest on the loans which Valley has purchased a participation in once a month by one check and does not individualize on that check the amounts by customer name.

28. Valley has never conveyed any interest in a participation which it has purchased to any other financial institution other than back to Bank. David Lehman testified that although it might be possible to do this, he knows of no instance when this has ever been done by any financial institution.

29. Bank loan officers, not Valley loan officers, supervise the day-to-day management of the loans.

### Conclusions of Law

1. Under the intangibles tax code any person residing in Indiana is subjected to an intangibles tax if said person receives the income or profits of an intangible.

2. The intangibles tax code contains an exemption for debt instruments of a subsidiary corporation to the extent such intangibles are owned by a parent corporation owning at least eighty percent (80%) of the voting stock of the subsidiary corporation.

3. Plaintiff is making loans to Bank and not to the commercial customers of Bank.

4. Valley does not own and is not exercising a taxable privilege as said term is used regarding intangibles subject to tax in the State of Indiana.

5. The loans which constitute participation loans by Valley with Bank are not subject to Indiana intangibles tax; said loans do not come within the definition of an intangible subject to tax as regards Valley.

6. Even if said participation loans and the interest therein acquired by Valley were intangibles, they would be exempt pursuant to the parent-subsidiary exemption provided by Indiana law.

7. Valley is entitled to a refund of $21,897.69 tax, interest and penalty thereon to date of payment in the amount of $5,111.41, and interest thereon from date of payment as required by law."

The Department argues that the trial court erred in holding that Valley does not own and does not exercise a taxable privilege pursuant to the statutes regarding intangible taxes. The Department also asserts that the trial court's holding that the transactions between Valley and Valley Bank and Trust Company constituted loans from Valley to the Bank is erroneous.

The participation agreements contemplate Valley's purchase of an undivided interest in a loan which was previously made by the Bank to one of its customers. Representative clauses of the participation agreement are:

"WHEREAS, Valley desires to purchase an undivided interest in the obligations of Borrower to repay Bank for said loans and in the collateral pledged, assigned, mortgaged or hypothecated to Bank as security for the repayment of such loans, and WHEREAS, Bank is, under certain terms and conditions, willing to allow Valley to purchase an interest in such loans,

\*   \*   \*   \*   \*   \*

4. As long as Valley owns a participation hereunder, in consideration of Bank holding and managing the interest of Valley in such loans, Valley agrees to

reimburse Bank for a percentage of attorneys' fees, court costs and other expenses, other than salaries and expenses of salaried employees of Bank actually incurred in enforcing collection and liquidating the loans to Borrower based upon the percentage of Valley's participation in the total loans to Borrower. Bank agrees to collect from Borrower and pay to Valley when collected, a sum equal to four percent (4%) above the existing prime rate as established by the major Chicago banking institutions, interest to be on the outstanding principal on a daily basis and

\* \* \* \* \* \*

6. At any time while this Agreement is in effect and by virtue hereof, Valley is vested with an undivided franctional or participating interest in the obligations of Borrower and in and to the collateral securing the obligations in an amount equal to Valley's participating investment in the aggregate net loans or advances to Borrower, and Bank is vested with the remaining undivided fractional participating interest.

7. Valley acknowledges that Bank makes no express or implied representation or warranty with respect to the validity, effect, enforcement or enforceability or collection or collectability of such obligations of Borrower or of the collateral securing such obligations, and by acceptance of this Participation Agreement, Valley agrees that Bank may exercise or refrain from exercising any right or privilege granted to it by or under the instruments evidencing or securing such obligations to the same extent and with the same force and effect as if this Participation Agreement had not been made, and Bank shall be free from liability of any sort on account of this participation or with respect to any thing it may do or refrain from doing in good faith in the exercise of its judgment; provided, however, that Bank agrees to use the same care in protecting Valley's interest as owner of an aforesaid participation as it does for its own and agrees to account to Valley as hereinabove provided, and that Bank will not, without written consent of Valley, modify or extend the terms of the Accounts Receivable Agreement and Inventory Security Agreement, or release or discharge, without payment of all sums due Valley, any collateral securing the indebtedness of Borrower except as provided in the aforesaid Agreements."

It is apparent from the written documents that by entering into a participation agreement Valley was actually purchasing an interest in the loan between the Bank and the customer. To the extent of this purchased interest, the Bank was essentially acting as Valley's agent in collecting the loan payments and remitting to Valley its share of the payments. The fact that the Bank acts as an agent does not in any way alter Valley's ownership of an interest in the customer's debt. *See generally Ind. Dept. of Rev. v. Waterfiled [sic] Mtg.* (1980), Ind.App., 400 N.E.2d 212; *Meridian Mortg. Co., Inc. v. State* (1979), Ind.App., 395 N.E.2d 433. It is clear that Valley owned an undivided interest in the loans from the Bank to the customer. In this regard, the trial court erred in finding that the participation agreements were in reality loans from Valley to the Bank.

■ IC 1971, 6–5.1–1–1 (Burns 1978 Repl.)[1] defines "intangible" as:

"The term 'intangible' includes:

(1) A promissory note;

(2) A share of stock in a foreign corporation;

(3) A bond;

(4) A debenture;

(5) A postal savings certificate;

(6) Equity in a brokerage or trading account;

(7) A deposit of money;

(8) A loan account;

(9) A debt instrument with interest coupons;

(10) A registered corporate security evidencing a debt;

1. Formerly IC 1971, 6-5 -1- 1 (Burns Code Ed.).

(11) A written instrument or certificate evidencing a debt, including a mortgage, a chattel mortgage, a bill of sale, and a conditional sales contract;

(12) A written instrument securing an unwritten debt;

(13) A written instrument evidencing an exchange of property when the ultimate transfer of title is intended;

(14) A written contract for payment of money; and

(15) An instrument bearing interest for the benefit of the holder of that instrument or the holder of another instrument."

Inasmuch as it is an undivided interest in the original loan from the Bank to the customer that Valley has purchased, it is clear that Valley's interest fits squarely within the statute's definition of intangible. The trial court erred in holding otherwise.

■ The trial court also erred in concluding that Valley did not exercise a taxable privilege. IC 1971, 6–5.1–2–1 (Burns 1978 (Repl.) [2] provides:

"Transactions and privileges taxable.—
(a) A person residing or domiciled in Indiana shall pay an intangibles tax in the manner provided in this article for exercising any of the following privileges:

(1) Executing, selling, assigning, transferring, renewing, removing, consigning, mailing, shipping, trading-in, controlling, or enforcing an intangible;

(2) Receiving income, increase, issues, or profits of an intangible;

(3) Passing an intangible or income from an intangible to another person by will, gift, or intestate succession; or

(4) Having an intangible classified for tax purposes.

(b) In the case of a trust existing under a trust instrument which empowers the settlor to amend or revoke the trust, for purposes of determining situs and tax liability under this article, the settlor, rather than the fiduciary, is the owner of the intangibles in the trust. In all other cases involving a fiduciary, the fiduciary is the owner."

At the very least, Valley is receiving income from the interests it has purchased.

The trial court also held that

"[e]ven if said participation loans and the interest therein acquired by Valley were intangibles, they would be exempt pursuant to the parent-subsidiary exemption provided by Indiana law."

This conclusion was apparently based on the trial court's finding that the transactions between Valley and the Bank were in reality, loans.

■ IC 1971, 6–5.1–5–2 (Burns 1978 Repl.) [3] provides:

"Stock or bonds of parent or subsidiary.—
(a) A corporation is exempt from the intangibles tax, to the extent that the tax is measured by stock or written debt instruments of another corporation, which is a parent or a subsidiary of the exempted corporation.

(b) A parent-subsidiary relationship exists between two [2] corporations if one [1] corporation owns eighty percent (80%) or more of the voting stock of the other corporation."

Although Valley owns in excess of 80% of the voting stock of Valley Bank and Trust Company, this exemption is not applicable. Valley is not being taxed on a written debt instrument from Valley Bank and Trust Company, but rather, on its ownership of an undivided interest in the original loan from the Bank to its customer.

For the above reasons the judgment of the trial court is reversed and the case remanded for proceedings consistent with this opinion.

Reversed and remanded.

GARRARD and STATON, JJ., concur.

2. Formerly IC 1971, 6–5–1–1, 6–5–1–2 (Burns Code Ed.).

3. Formerly IC 1971, 6–5–1–33 (Burns Code Ed.).