GROSS INCOME TAX DIVISION, STATE OF INDIANA *v.*
INDIANA ASSOCIATED TELEPHONE CORPORATION.

[No. 17,760. Filed December 7, 1948. Rehearing denied
January 5, 1949.]

*Cleon H. Foust,* Attorney General, *Eugene M. Fife,
Jr., John J. McShane, Lloyd C. Hutchinson,* Deputy
Attorneys General, all of Indianapolis, attorneys for
appellant.

*Stuart, Devol, Brainigin, Ball & Ricks,* all of La-
fayette, *McHale, Patrick, Myers & Cook,* all of Indian-
apolis, attorneys for appellee.

ROYSE, P. J.—This action arose out of a dispute between appellant and appellee as to the gross income of the latter for the years 1939, 1940, and 1941. The facts as shown by the record may be summarized as follows: The appellee is a corporation organized and existing under the laws of this state. The Michigan Associated Telephone Company (hereinafter referred to as Michigan) is a corporation existing under the laws of Michigan. The Lexington Telephone Company (hereinafter referred to as Lexington) is a corporation existing under the laws of Delaware. Each of these corporations do a general telephone business. Appellee is the only one of the three authorized to do business in this state. Michigan operates in Michigan. Lexington operates in Kentucky. The common stock of all of these corporations is owned by the General Telephone Corporation of New York (hereinafter referred to as the General), a corporation existing under the laws of New York. For many years the first three mentioned companies and another subsidiary of the General (not involved here) maintained what are known as group offices in Madison, Wis. Appellee, Michigan and Lexington had the same president, treasurer, secretary, general auditor, chief engineer and plant superintendent, group and commercial superintendent, and traffic superintendent. These officers maintained their offices in the group office at Madison, Wis. Each of the three companies had its own Vice-president residing at the home office in the state in which it operated.

About August, 1930, to avoid the unnecessary expense to each of these companies in operating its own separate billing and accounting office, these group officers at Madison set up a central billing and accounting office (hereinafter referred to as Bureau). This Bureau was located on the premises of appellee, first

at Goshen and later at Lafayette, Indiana. Appellee was paid rent for the use of office space required by this Bureau. It also charged the Bureau for telephone calls in the same manner it did its regular customers. (In this case appellee does not contend that the sums it received for rent and telephone charges are non-taxable). It was conducted separately and apart from the business of appellee. However, it was operated in the name of appellee. It was under the supervision and control of the group officers at Madison, Wis. The function of the Bureau was to prepare and mail to the subscribers of each of these companies the monthly telephone bills and to perform such additional services as related to lists of their subscribers, such as the compilation and revision of their respective telephone directories. It was under the immediate control of a local manager who was appointed to the position and whose salary was fixed by the general auditor at Madison acting for said three companies. The local manager, with the approval of the general auditor, employed and fixed the wages of its employees. Appellee had nothing to do with its management or operation.

The operating expenses of the Bureau which could be directly attributed to a single company, were charged to such Company in full. All other expenses were pro-rated among the three on the basis of the proportion which the total number of telephones served by each Company bore to the total number served by all three.

The following plan was adopted for the contribution of each Company for the expenses of the Bureau: Shortly after the first day of January of each year an estimate of the expenses of operating such office during such month was prepared, together with the estimated

portion thereof to be borne by each of such Companies. Following such estimate Michigan and Lexington transmitted to the appellee their respective portions as shown by such January estimate. The funds so transmitted to the appellee, supplemented by such additional funds provided by it as were necessary, were then disbursed by it in payment of the expenses of such Bureau pursuant to requisitions made upon it. As soon as practicable after the close of the month of January, a summary or statement of the actual expenses of such office for such month was prepared, which expenses were classified in such summary as either "direct" or "prorate." The amount so set out upon such statement or summary as each Company's portion of the expenditures actually incurred by such office during the month of January was then adopted as its estimated portion of the anticipated expenses for the ensuing month of February. Michigan and Lexington thereupon transmitted to the appellee the amounts so charged to them, as their estimated portion of the anticipated expenses of such office for February. The same plan was followed each succeeding month.

The appellee supplied from its own funds each month whatever amounts were necessary, over and above the funds so transmitted by the two out-state Companies, to meet the actual expenditures of such office for such month. Necessarily, during some months of the year the funds so supplied by the appellee exceeded its estimated portion of such expenses for such month as shown by the monthly estimate, while in other months the funds so supplied by it for such purpose were less. The practical effect of such arrangement was that when the estimate was made for the month of December on the basis of the actual expenditures for the month of November, and such two out-state

Companies had accordingly transmitted to appellee their portions of such December estimate, each of the three Companies had contributed its full share of the actual expenses of such Bureau for the first eleven months of the year. As soon as the actual expenses for the month of December and the portion thereof chargeable to each of the three Companies were determined, the necessary adjustments were made, so that, after such adjustments, each of the three Companies had fully paid its correct portion of the total actual expenses of operating such Bureau during such year.

Appellee asserts that it erroneously included in its Gross Income Tax Returns for the years 1939, 1940, and 1941 the sums received from Michigan and Lexington as their share of the expenses of the Bureau. On or about December 2, 1942, appellee filed its verified claim for a refund of taxes erroneously paid in the sum of $1,328.12. Appellant denied this claim. Appellee then brought this action. Trial resulted in judgment in favor of appellee for $1,455.04. Appellant appeals that judgment on the sole ground the trial court erred in overruling its motion for a new trial, which motion specifies the decision of the trial court is contrary to law and is not sustained by sufficient evidence. It also attempts to question the admission of certain oral evidence and the amendment of the complaint herein.

There is but one substantial question in this appeal. It is: Did the funds received by appellee from Michigan and Lexington for the expenses of the Bureau constitute taxable gross income under the Gross Income Tax Act? We are of the opinion that our Supreme Court, in the case of *Department of Treasury* v. *Ice Service, Inc.* (1942), 220 Ind. 64, has answered this

question in the negative. The facts in that case, as stated in the opinion, were as follows:

"The appellee was organized as a corporation under the laws of the State of Indiana, on May 22, 1930, by four companies which were then engaged in the business of manufacturing, selling, and distributing ice in Vanderburgh County, Indiana. These four companies entered into a verbal agreement by the terms of which it was agreed that the appellee company should thereafter sell and distribute the ice manufactured by the four manufacturing companies. Pursuant to the agreement an audit was made of the business done by the four companies during the years 1927 and 1928 and it was thereby determined what proportion of the total business of the four companies each company had done during those two years. It was agreed that each of the four manufacturing companies should annually furnish to the appellee company ice for sale in the same proportion its sales during the two years bore to the total sales of the four companies for that period; and that each company should share in the distribution of the proceeds from the sale of ice by the appellee in the same proportion.

"Each of the manufacturing companies, on the organization of the appellee company subscribed for stock in, and furnished capital to, the appellee company. The operating expense of the appellee company, in the sale and distribution of the ice, was deducted from the gross receipts from the sale of the ice and the balance of the proceeds then distributed proportionately as above indicated to the four manufacturing companies. Each of the manufacturing companies carried on its books the gross receipts from the appellee from the sale of its (the manufacturing company's) proportionate share of the ice sold by the appellee and also carried on its books, as an expense of its business, its proportionate share of the sales and distribution costs of the appellee company. The appellee carried the proceeds from the sale of ice on its books in the same manner.

"Each of the manufacturing companies paid gross income tax on its proportionate share of the

total amount received from the sale of ice by the appellee without deduction of the expense of the sale and distribution of said ice. Such gross income taxes paid by the manufacturing companies were at the proper rate for each company's proportionate share of the wholesale and retail sales made by the appellee company. . . .

". . . appellee made federal net income tax returns in which it reported receipts from the sale of ice under the item 'Cost of Goods Sold' and similar amounts under the item 'Material or Merchandise Bought for Manufacture or Sale.' . . .

". . . the ice of the four manufacturing companies was commingled. At times one of the manufacturing companies would temporarily shut down its plant and during such shut-down would furnish no ice to the pool. The appellee did not account to each of the manufacturing companies for proceeds of the sale of the particular ice furnished by such manufacturing company, but only distributed the proceeds on the basis of the proportionate share of the ice furnished by the four companies."

The appellee in that case paid the gross income tax on its receipts from the sale of the ice. It then brought an action against appellant for the recovery of the tax so paid. The trial court found in favor of appellee. In a well-reasoned opinion by Judge Swaim, supported by pertinent authority, the court affirmed the judgment of the trial court on the ground the appellee was merely an agency of the four companies in the sale and distribution of their ice.

There is a striking analogy in the basic facts in that case and those in this case. The objective was the same. The only difference is in the vehicle used to accomplish the purpose. Certainly the fact in that case that the agency created was a corporation while in this case it was not, would not change the funds the agency received from non-taxable to taxable income. We hold the Bureau was an agency

of the three companies created for the purpose of reducing their operating expenses. Appellee was merely a trustee for distributing the expenses of operating the agency. It could not have retained the money so received for its own use and purpose. Therefore, under the Regulations of appellant, these funds were not taxable. Regulation No. 1612 of the Regulations, Gross Income Tax Division, Dept. of Treasury of Indiana, April 15, 1940; Regulation No. 1211, Indiana Gross Income Tax Regulations, Series VII, approved April 27, 1946.

In our opinion, the question of whether appellee under its charter had the right or authority to make such an arrangement is no concern of appellant. It has not been harmed by the transaction.

Appellant has not properly presented the questions it seeks to raise regarding the admission of evidence and the amendment of the complaint.

Judgment affirmed.

NOTE.—Reported in 82 N. E. 2d 539.