UNIVERSAL GROUP LIMITED; Universal Flavors International, Inc.; Universal Flavor Corporation; Universal Flavors of Indiana, Inc.; Universal Flavors of New Jersey, Inc.; Hurty–Peck & Company; Blanke Baer/Bowey Krimko Corporation; and Cock'N Bull, Ltd., Petitioners,

v.

INDIANA DEPARTMENT OF STATE REVENUE, Respondent.

No. 49T10–9108–TA–00039.

Tax Court of Indiana.

March 1, 1993.

Barton T. Sprunger, Mark J. Richards, Ice Miller Donadio & Ryan, Indianapolis, for petitioners.

Pamela Carter, Atty. Gen., David A. Arthur, Jane E. Griffin, Deputy Attys. Gen., Indianapolis, for respondent.

FISHER, Judge.

The Petitioners, Universal Group Limited, Universal Flavors International, Inc., Universal Flavor Corporation, Universal Flavors of Indiana, Inc., Universal Flavors of New Jersey, Inc., Hurty–Peck & Company, Blanke Baer/Bowey Krimko Corporation, and Cock'n Bull, Ltd. (collectively referred to as the affiliated corporations)[1] seek the refund of gross income tax,[2] interest, and refund interest from the Respondent, the Indiana Department of State Revenue (the Department), for the years 1983, 1984, 1985, and the period from January 1, 1986, through March 31, 1986. This matter is before the court on the parties' motions for summary judgment.

## ISSUES

The parties raise two issues, which the court restates as:

I. Are reimbursements for expenses incurred by the affiliated corporations under certain expense sharing arrangements receipts of gross income subject to taxation.

II. Whether corporations neither incorporated in Indiana nor authorized to do business in Indiana may be included in a consolidated gross income tax return under IC 6–2.1–5–5(b), and, if so, whether the gross income from intragroup transactions is deductible in determining taxable gross income under IND.CODE 6–2.1–4–6(a).

## FACTS

The following facts are undisputed. During the years at issue, the affiliated corporations were engaged in the development, production, sales, and distribution of food and beverage flavorings. To avoid duplicating expenses, the affiliated corporations designated one or more corporations to act on behalf of the other corporations in performing certain centralized functions on a non-profit basis. The centralized functions included general accounting and data processing, general administration, customer service accounting, laboratory testing, sample production, international development, and sales and sales-related services. Expenses for these centralized functions were allocated among the affiliated corporations on the basis of formulas designed to approximate each entity's use and benefit from the services. Reimbursement for expenses incurred was generally accomplished by accounting entries, but prior to 1984, checks were sometimes issued between the corporations.

For the years at issue the affiliated corporations filed consolidated gross income tax returns. By an apparent oversight, however, the 1983 return did not include the income of one subsidiary, Universal Flavors of New Jersey, Inc. (UNJ). Four of the eight corporations included in the consolidated returns, i.e., Universal Flavors International, Inc., Universal Flavor Corporation, Universal Flavors of Indiana, Inc., and UNJ, were each incorporated in Indiana. The other four corporations, UGL, Hurty–Peck & Company (HPN), Blanke Baer/Bowey Krimko Corp. (Blanke), and Cock'n Bull, Ltd. (CBL), were, however, neither Indiana corporations nor authorized to do business in Indiana during the relevant tax period. Blanke and UGL (which changed its name

---

1. During the relevant period Universal Group Limited (UGL) owned, either directly or indirectly, all the stock of the subsidiaries. "Corporations are affiliated if at least eighty percent (80%) of the voting stock of one (1) corporation (exclusive of directors' qualifying shares) is owned by the other corporation." IND.CODE 6–2.1–5–5(a).

2. IND.CODE 6–2.1–1, et seq.

to Universal Flavor Corporation on August 31, 1987) subsequently became authorized to do business in Indiana on January 7, 1988. CBL and HPN, through a process of mergers, were absorbed into Universal Flavors–U.S.A., Incorporated (USA),[3] an Indiana corporation, on September 30, 1987.[4]

The Department assessed additional gross income tax and interest against the affiliated corporations for the period at issue. The affiliated corporations paid the amount assessed and filed claims for refund of the gross income tax and interest attributable to the reimbursement transactions, totaling $210,213.69. The Department denied the claims for refund, and the affiliated corporations now appeal.

### DISCUSSION AND DECISION

### I

### STANDARD OF REVIEW AND RELEVANT LAW

■ Summary judgment may be granted if no genuine issue of material fact exists and a party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). The affiliated corporations seek summary judgment contending the reimbursements under the expense sharing arrangements do not constitute gross income because they were received in an agency capacity. The Department has filed a cross motion for summary judgment on this issue. "Cross motions for summary judgment do not alter the standard for granting summary judgment." *Caylor–Nickel Clinic, P.C. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 569 N.E.2d 765, 766, *aff'd*, (1992), Ind., 587 N.E.2d 1311.

To analyze the reimbursement transactions, an overview of Indiana's gross income tax statutory scheme, case law, and related taxation principles is necessary.

*Statutes:*

■ Under Indiana's income tax statutes:

> (a) An income tax, known as the gross income tax, is imposed upon the *receipt* of:
>
> (1) the entire *taxable gross income* of a taxpayer who is a resident or a domiciliary of Indiana; and
>
> (2) the *taxable gross income* derived from activities or businesses or any other sources within Indiana by a taxpayer who is not a resident or a domiciliary of Indiana.

IND.CODE 6–2.1–2–2 (emphasis added). For purposes of gross income tax, the definition of "gross income" is comprehensive: "Except as expressly provided in [article 2.1], 'gross income' means all the gross receipts a taxpayer receives." IND.CODE 6–2.1–1–2(a). As applied to a taxpayer, "receipts" are "the gross income in cash, notes, credits, or other property that is received by the taxpayer or a third party *for the taxpayer's benefit.*" IND.CODE 6–2.1–1–10 (emphasis added). Likewise, a taxpayer "receives" gross income upon "(1) the actual coming into possession of, or the crediting to, the taxpayer, of gross income; or (2) the payment of a taxpayer's expenses, debts, or other obligations by a third party *for the taxpayer's direct benefit.*" IND.CODE 6–2.1–1–11 (emphasis added). Accordingly, the taxpayer's beneficial interest in income is central to the receipt of gross income.

" 'Taxable gross income' means the remainder of: (1) all gross income which is not exempt from tax under IC 6–2.1–3; less (2) all deductions which are allowed under IC 6–2.1–4." IND.CODE 6–2.1–1–13. The affiliated corporations do not contend the reimbursement transactions are exempt from gross income tax under IC 6–2.1–3. As will be discussed below, however, they do contend the transactions are deductible as intragroup transactions among affiliated

---

**3.** Universal Flavor Corporation, an Indiana corporation, was one of the eight corporations included in the consolidated returns; it changed its name to USA on August 31, 1987.

**4.** CBL merged into HPN on September 30, 1986, and HPN later merged into USA on September 30, 1987.

corporations under IC 6–2.1–4–6(a) for purposes of determining taxable gross income.

*Case Law:*

The relevant case law begins with *Department of Treasury v. Ice Service, Inc.* (1942), 220 Ind. 64, 41 N.E.2d 201. In this case, the Indiana Supreme Court laid the foundation for the analysis of whether gross income received by an agent is taxable to the agent. In *Ice Service*, four ice manufacturing companies set up a corporation to act as an agent for handling the sales and distribution of ice. Each manufacturing company paid gross income tax on its proportionate share of the total amount received from the sales of the ice. The Department, however, assessed gross income tax against the sales and distribution corporation on the revenues from the sales of the ice. Under these facts, the Indiana Supreme Court found that the corporation, an agent for sales and distribution, was not taxable on the income from the sales of ice.

In *Gross Income Tax Division v. Indiana Associated Telephone Corp.* (1948), 118 Ind.App. 669, 82 N.E.2d 539, the Indiana Appellate Court was faced with a case involving the taxation of reimbursements. In *Indiana Associated Telephone*, three wholly owned subsidiary corporations set up a central billing and accounting office known as the Bureau. One of the subsidiaries, Indiana Associated Telephone Corp. (Associated Telephone), advanced certain operating expenses to the Bureau, and in turn the other subsidiaries reimbursed Associated Telephone for these expenses. The Department then assessed gross income tax against Associated Telephone on the reimbursements. The appellate court, however, held "the Bureau was an agency of the three companies created for the purpose of reducing their operating expenses. [Associated Telephone] was merely a trustee for distributing the expenses of operating the agency [Bureau]. It could not have retained the money so received for its own purpose." *Id.* at 675–76, 82 N.E.2d at 542.

The appellate court concluded Associated Telephone was not subject to gross income tax on the reimbursements, based upon Department regulations then applicable, including Regulation 1211, Indiana Gross Income Tax Division (repealed, now 45 I.A.C. 1–1–54), which stated:

> Money or property received by a taxpayer in which he has no right, title or interest, but is received as [an] agent for a third party or parties, will not be included in the taxpayer's individual return of gross income, but any commission received by him for his services must be included as taxable gross income.

The Indiana Supreme Court revisited the question of whether reimbursements constitute gross income in *Western Adjustment & Inspection Co. v. Gross Income Tax Division* (1957), 236 Ind. 639, 142 N.E.2d 630. This case involved a corporation that provided insurers with claims adjustment services on a non-profit basis. Under an oral agreement, the insurers reimbursed the corporation for the expenses incurred in providing the adjustment services, and the corporation claimed the reimbursements were not gross income, relying on *Ice Service* and *Indiana Associated Telephone.*

The supreme court first noted that *Ice Service* did not address the taxability of reimbursements: "No issue was … made [in *Ice Service*] as to the taxability of the amount retained as reimbursement for selling expense." *Western Adjustment & Inspection*, at 646, 142 N.E.2d at 633. Moreover, the supreme court distinguished *Indiana Associated Telephone* on the basis that the reimbursements involved in that case substantively represented "pass throughs" of income, implying the Bureau, rather than the entity receiving reimbursement, was the entity ultimately responsible for gross income tax:

> It should be noted in [*Indiana Associated Telephone*] that the taxpayer involved was not the bureau which was performing the service, but was one of the corporations….
>
> *No issue was made in that case as to whether or not the bureau was taxable*

*upon receipts for services performed.*[5] Any dicta to such an effect in that case is expressly disapproved since no issue on that point was there involved. Under the Gross Income Tax Act of 1933, as amended, § 64–2601, subsection (a), Burns' 1951 Replacement, the term 'person' used as a taxpayer, includes a variety of formal and informal organizations including the term 'bureau.'

*Western Adjustment & Inspection,* at 645–46, 142 N.E.2d at 633–34 (emphasis added) (footnote added).

The supreme court focused on the beneficial interest in income and concluded the taxpayer in *Western Adjustment & Inspection,* unlike the taxpayer in *Indiana Associated Telephone,* was "not receiving funds in which it ha[d] no right, title, or interest. It [wa]s not receiving the funds merely to turn such funds over to a third person, but on the contrary, [wa]s using the funds in the operation of a business of considerable size. The [taxpayer] [wa]s not a mere temporary conduit through which the funds pass[ed], intact, so to speak." *Id.* at 647–48, 142 N.E.2d at 634. In addition, the supreme court stated the finding that the taxpayer was an independent contractor "necessarily negatived the existence of an agency or trusteeship *of the receipts involved similar* to [*Ice Service* and *Indiana Associated Telephone*]. There was a basis for the finding of the trial court that the receipts were taxable...." *Western Adjustment & Inspection,* at 649, 142 N.E.2d at 635 (emphasis added). The reference to the receipts involved in *Ice Service* and *Indiana Associated Telephone* indicates the relevant

scope of the taxpayer's agency must encompass the transactions giving rise to either the agent's receipt of income for a principal or the receipt of reimbursements for expenses advanced or paid to third parties.[6]

The next case to address the taxation of reimbursements was *Indiana Department of State Revenue v. Marsh Supermarkets, Inc.* (1980), Ind.App., 412 N.E.2d 261. In *Marsh Supermarkets,* a parent corporation contractually agreed to act as an agent for two wholly owned subsidiaries in performing unspecified personnel functions. The subsidiaries in turn reimbursed the parent for its expenses. The Department did not contest the parent's agency status in the transactions, but instead claimed the percentage formulas the corporations used to determine reimbursements did not accurately reflect the parent's expenses. The court of appeals found: "Because payments from a principal to an agent as reimbursement for costs are not subject to the gross income tax, *Gross Income Tax Division v. Indiana Associated Telephone Corporation* (1948), 118 Ind.App. 669, 82 N.E.2d 539, and because the payments so received in this case under the percentage formulas were fairly accurate, the trial court's decision in this issue has a basis in law and fact." *Marsh Supermarkets,* 412 N.E.2d at 268.

The court of appeals did not explicitly analyze the beneficial interest in the reimbursements, that is, whether the reimbursements were for advances or payments to third parties, thus substantively representing "pass throughs" of income.[7] Rath-

5. The Bureau was an agent "created for the purpose of reducing ... operating expenses." *Indiana Associated Telephone,* 118 Ind.App. at 675–76, 82 N.E.2d at 542.

6. As stated above, the appellate court in *Indiana Associated Telephone* held that Associated Telephone "*was merely a trustee for distributing the expenses* of operating the agency [Bureau]. It could not have retained the money so received for its own purpose." *Id.* at 675–76, 82 N.E.2d at 542 (emphasis added).

7. The Department asserts the reimbursements in *Marsh Supermarkets* were for employee benefits and payroll expenses that the parent paid to

the subsidiaries' employees. The *Marsh Supermarkets* opinion includes the trial court's findings of fact and conclusions of law, which state that the parent "performed various administrative functions as agent" for its subsidiaries. *Id.* at 262–63, n. 1. The opinion, however, does not specify what the "administrative functions" were, though it indicates they were related to personnel matters. *Id.* at 266. Nor does the opinion specify whether the reimbursements the parent received from the subsidiaries were for advances or payments from the parent to third parties or, alternatively, were for the parent's own expenses incurred on behalf of the subsidiaries.

er, the court of appeals found *Western Adjustment & Inspection* inapposite because that case involved an independent contractor, unlike the agency relationship present in *Marsh Supermarkets*. *Id.*

## PARTIES' CONTENTIONS AND APPLICATION OF LAW

The Department contends *Western Adjustment & Inspection* is dispositive and argues the affiliated corporations received reimbursements for expenses incurred in providing the various centralized functions, not for amounts advanced or paid to third parties. The affiliated corporations, however, contend *Western Adjustment & Inspection* is distinguishable from the case at bar because the party receiving reimbursements in that case was an independent contractor, rather than an agent. Furthermore, the affiliated corporations claim that because their reimbursement transactions were the product of agency relations involved in expense sharing arrangements, the result in the case at bar should be the same as in *Ice Service, Indiana Associated Telephone,* and *Marsh Supermarkets.*

■ The court must today clarify whether reimbursements made pursuant to expense sharing arrangements constitute receipts of gross income subject to gross income taxation. The issue here is not whether the reimbursements are exempt from gross income tax or deductible in determining taxable gross income, but rather, whether the taxpayer, or some other party, has *received* gross income. As applied to a taxpayer, "receipts" are "the gross income ... that is received by the taxpayer or a third party for the taxpayer's benefit." IC 6–2.1–1–10. Thus, whether the reimbursements under the expense sharing arrangements constitute gross income to the affiliated corporations depends upon the beneficial interest in the reimbursements.

> [Q]uestion[s] of who is the proper party to bear the tax burden with respect to certain income[] are issues with which various tribunals have long struggled.... [I]t is a princip[le] of long standing that the incidents of taxation follow the beneficial interest in income. Thus, a person who is a mere conduit for another is generally not taxable on the income received.

2 J. MERTEN, *THE LAW OF FEDERAL INCOME TAXATION* § 17.02 at 6 (1989). *See also Bloomington Country Club v. State Dep't of Revenue* (1989), Ind.Tax, 543 N.E.2d 1; *United Artists Theatre Circuit, Inc. v. Indiana Dep't of State Revenue* (1984), Ind.App., 459 N.E.2d 754, *trans. denied; Indiana Dep't of Revenue v. Waterfield Mortgage Co.* (1980), Ind. App., 400 N.E.2d 212, *trans. denied.* Accordingly, "[w]here a principal/agent relationship exists, *within the scope of the agency,* income realized by the agent is taxable to the principal and not to the agent." 2 J. MERTEN, *THE LAW OF FEDERAL INCOME TAXATION* § 17.10 at 17 (1989) (emphasis added).

In *Western Adjustment & Inspection,* the supreme court set forth the purposes of the gross income tax in analyzing whether reimbursements constitute gross income to a taxpayer:

> To interpret an exception to the [gross income tax] so that it will 'encompass *all* relationships whereby one person incurs expenses for another under an agreement to be reimbursed' ... would, in our opinion, to all practical effects, convert a gross income tax into a net income tax. Without too much difficulty, the receipts in most cases could be made under a contract or oral agreement by which a certain share or portion thereof is a reimbursement for expenses incurred, leaving a tax merely upon a remainder or surplus as a presumptive profit. The gross income tax is applicable regardless of any profit being involved. *Walgreen Co. v. Gross Income Tax Div.* (1947), 225 Ind. 418, 75 N.E.2d 784, 1 A.L.R.2d 1014. A contrary interpretation would result in most non-profit transactions being tax-free. By extending and engrafting exemptions upon a gross tax, it progressively becomes a net tax. We are not arguing that this would be more equitable or just—that is not within our province for decision. The taxing policy, and

the basis upon which the tax is to be levied, as well as the exemptions applicable, is for the legislature to determine. *Department of Treasury of Indiana v. Crowder* (1938), 214 Ind. 252, 15 N.E.2d 89.

*Id.*, 236 Ind. at 645, 142 N.E.2d at 633.

Accordingly, *Western Adjustment & Inspection* stands for the proposition that reimbursements of a taxpayer's own expenses are receipts of gross income to the taxpayer; were this not so, the purposes of the gross income tax would be undermined. Conversely, reimbursements to an agent for amounts advanced or paid to third parties substantively represent "pass throughs" of income and therefore are not taxable to the agent. *See Indiana Associated Telephone*, 118 Ind.App. at 675–76, 82 N.E.2d at 542; *see also Rho Co. v. Department of Revenue* (1989), 113 Wash.2d 561, 567, 782 P.2d 986, 989–90 (agent's reimbursements of amounts advanced to third parties do not constitute gross income under Washington business and organizations tax).

Moreover, the Department's regulation for the taxation of an agent's gross income also reflects the concept of the agent as a conduit through which funds pass:

Agents. Taxpayers are not subject to gross income tax on income they receive in an agency capacity. However, before a taxpayer may deduct such income in computing his taxable gross *receipts*, he must meet two (2) requirements:

(1) The taxpayer must be a true agent. Agency is a relationship which results from the manifestation of consent by one person to another authorizing the other to act on his behalf and subject to his complete control, and consent by the other to so act....

(2) The agent must have no right, title or interest in the money or property received or transferred as an agent. In other words, *the income received for work done or services performed* on behalf of a principal *must pass intact to* the principal or *a third party;* the agent is merely a conduit through which the funds pass. *A con-*

*tractual relationship whereby one person incurs expense under an agreement to be reimbursed by another is not an agency relationship unless the other elements of agency exist, particularly the element of control, discussed above.*

45 I.A.C. 1–1–54 (emphasis added).

■ The court further notes the legislature has in IC 6–2.1–4–6 contemplated the gross income tax consequences of transactions between corporations, though not necessarily transactions conducted within the scope of an agency arrangement. Under this statute, corporations filing consolidated returns are entitled to a deduction in determining taxable gross income that "equals the total amount of gross income *received* during the taxable year from transactions between members of the [affiliated] group...." IC 6–2.1–4–6(a) (emphasis added). If such transactions did not result in gross income to the recipient corporations in the first instance, a deduction in determining taxable gross income would be superfluous. The court may not, however, presume the legislature intended to enact a meaningless statute. *Caylor–Nickel Clinic*, 569 N.E.2d at 773 (citing *State ex rel. Hatcher v. Lake Super.Ct.* (1986), Ind., 500 N.E.2d 737, 739).

Finally, the affiliated corporations contend, citing *AirKaman, Inc. v. Groppo* (1992), 221 Conn. 751, 607 A.2d 410, the reimbursements in question do not constitute gross income. In addition to the fact that the *AirKaman* case is not controlling precedent, the court also finds it unpersuasive. In *AirKaman,* the Connecticut Supreme Court held that reimbursements for certain expenses incurred in managing an airport facility were not subject to a sales and use tax imposed on the gross receipts from the sale of "management services." *Id.* at 762–63, 607 A.2d at 416. In so holding, the court found that only management fees, and not reimbursements for expenses, constituted consideration received for the sale of management services. *Id. AirKaman* did not address whether the reimbursements constituted receipts of gross income to the airport managers.

■ The court now turns to the disposition of the parties' cross motions for summary judgment. In considering the motions, "[e]ach ... must be considered separately to determine whether there is a genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Caylor–Nickel Clinic*, 569 N.E.2d at 766. To obtain summary judgment, "[t]he moving party first must establish that no genuine issue of material fact exists." *Scott Oil Co. v. Indiana Dep't of State Revenue* (1992), Ind.Tax, 584 N.E.2d 1127, 1128 (citing *State v. American Motorists Ins. Co.* (1984), Ind.App., 463 N.E.2d 1142, 1145–46).

In the case at bar, the Department relies on the deposition of Peter Gould, citing passages indicating the reimbursements are not for amounts advanced or paid to third parties. *Respondent's Consolidated Brief* at 12–17. The deposition, however, also contains the following:

Q  What was the scope of the general accounting work that UGL did for its subsidiaries?

A  It would do the payables, do the receivables, do the general ledgers, for most of the subs[idiaries], *it would make the payments, pay the payroll*

. . . .

*Deposition of Peter Gould* at 19 (emphasis added). Accordingly, the Department has not met its burden to establish whether the reimbursement transactions, in whole or in part, reflect "pass through" transactions. The affiliated corporations have similarly failed to meet their burden to show the reimbursements are for advances or payments to third parties and therefore represent "pass throughs" of income.

■ The forum of summary judgment is appropriate neither to resolve factual disputes nor to resolve conflicting inferences arising from undisputed facts. *C & C Oil Co. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 570 N.E.2d 1376, 1378. Because a genuine issue of material fact exists regarding whether the reimbursement transactions represent "pass throughs" of income, summary judgment on this issue is inappropriate for either party.

II

As noted above, the affiliated corporations filed consolidated gross income tax returns during the period at issue. "Corporate members of an affiliated group that *are* incorporated in the state of Indiana or *are* authorized[8] to do business in the state of Indiana *may file* a consolidated gross income tax return." IC 6–2.1–5–5(b) (emphasis added) (footnote added). In a consolidated return, a deduction in determining taxable gross income is permitted for certain intragroup transactions:

[E]ach taxable year an affiliated group of corporations filing a consolidated return pursuant to IC 6–2.1–5–5 is entitled to a deduction from the gross income reported on such a return. The amount of the deduction equals the total amount of gross income received during the taxable year from transactions between members of the group that *are incorporated or authorized to do business in Indiana.*

IC 6–2.1–4–6(a) (emphasis added).

As for the consolidated returns in the case at bar, the Department fires the first summary judgment volley, contending that UGL, Blanke, CBL, and HPN were required by IC 6–2.1–5–5(b) to be either incorporated in Indiana or authorized to do business in Indiana when the consolidated returns at issue were filed. Consequently, the Department asserts these corporations were improperly included in the consolidated returns.

The affiliated corporations return fire with a summary judgment motion asserting that all the reimbursement transactions, even if constituting receipts of gross income, are deductible in determining taxable gross income under IC 6–2.1–4–6(a). The affiliated corporations contend there is

---

**8.** To be authorized to do business in Indiana during the period at issue, certain types of foreign corporations had to procure a "certificate of admission" before transacting business in Indiana. IND.CODE 23–1–11–1 (repealed, now IND.CODE 23–1–49–1) (requiring foreign corporations to obtain a "certificate of authority").

no time limit for the incorporation and authorization requirements within IC 6–2.1–5–5(b), and thus, the merger of CBL and HPN into an Indiana corporation and the authorization to do business of UGL and Blanke, all of which occurred after the filing of the consolidated returns, cure any problems existing at the time of filing.

To resolve the parties' dispute, the court must first determine whether the status of incorporation in Indiana or authorization to do business in Indiana is a prerequisite for purposes of inclusion in a consolidated return filing under IC 6–2.1–5–5(b). "The intent of the legislature embodied in a statute constitutes the law," *Johnson County Farm Bureau Coop. Ass'n, Inc. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 568 N.E.2d 578, 580 (citing *Wedmore v. State* (1954), 233 Ind. 545, 551, 122 N.E.2d 1, 4) *aff'd*, (1992), Ind., 585 N.E.2d 1336, and the court's foremost goal in construing statutes is to ascertain the legislature's true intent. *Id.* (citing *Scheid v. State Bd. of Tax Commr's* (1990), Ind. Tax, 560 N.E.2d 1283, 1286). " 'The best evidence of legislative intent is the statute itself. . . .' " *F.A. Wilhelm Constr. Co. v. Indiana Dep't of State Revenue* (1992), Ind.Tax, 586 N.E.2d 953, 956 (quoting *Indiana Dep't of State Revenue v. Indianapolis Pub. Transp. Corp.* (1990), Ind., 550 N.E.2d 1277, 1278–79). Accordingly, " '[i]n construing a statute, the court must consider the whole act and, if possible, effect must be given to every word phrase and clause therein.' " *Id.* at 955 (quoting *Guinn v. Light* (1990), Ind., 558 N.E.2d 821, 823). If IC 6–2.1–5–5(b) were construed to permit the inclusion of corporations neither incorporated in Indiana nor authorized to do business in Indiana in a consolidated return, its incorporation and authorization language, emphasized above, would be nullified.

The affiliated corporations contend, nonetheless, the case is analogous to *Caylor–Nickel Clinic*, 569 N.E.2d 765, in which this court held the filing requirement of

IND.CODE 6–2.1–3–24.5(d) (prior to amendment by Ind.Pub.L. 55–1990) was not a prerequisite to obtaining the small business corporation exemption to gross income tax under IC 6–2.1–3–24.5. In *Caylor–Nickel Clinic*, the taxpayer met the requirements for the small business corporation exemption under IC 6–2.1–3–24.5(a) through (c), but failed to file a Form IT–20SC. The case at bar does not involve the failure to file a particular tax form, but rather involves the failure to attain a particular status—incorporation in Indiana or authorization to do business in Indiana—prior to filing a return.

The affiliated corporations further argue that they fulfilled the purpose of IC 6–2.1–5–5(b) through the mergers into an Indiana corporation and the authorizations to do business, effected after the consolidated returns at issue were filed. According to the Department's Revenue Ruling 79–3517 GIT (January 18, 1980), the requirement of authorization to do business prior to the filing of a consolidated return is necessary to secure the joint and several liability of consolidated taxpayers. The revenue ruling does not, however, indicate that authorizations to do business acquired after the filing of a consolidated return are permissible.

The affiliated corporations also claim the requirements in IC 6–2.1–5–5(b) are intended merely to effect the policies of Indiana corporate law, and therefore, the failure to obtain authorization prior to filing does not affect the validity of the consolidated returns. Foreign corporations conducting business without authorization are subject to civil penalties and are prevented from maintaining proceedings in Indiana courts. *See* IND.CODE 23–1–11–14 (repealed, now IND.CODE 23–1–49–2). Notwithstanding, "the failure of a foreign corporation to obtain a certificate of authority does not impair the validity of its corporate acts or prevent it from defending any proceeding in Indiana." IC 23–1–49–2(e).[9] The validi-

9. The relevant corporate law statutes in effect during the years at issue did not contain a similar provision for the validation of the acts

of unauthorized foreign corporations. The official comments to IC 23–1–49–2(e), however, indicate it is a codification of prior case law. *See,*

ty of a corporation's actions, however, is distinct from whether its actions are proper for tax purposes. Additionally, the affiliated corporations argue the failure to observe Indiana's authorization requirements is but an "immaterial oversight." *Brief in Support of Petitioners' Motion for Summary Judgment* at 17–18. The hefty $10,-000 civil penalty for transacting business in Indiana without authorization convinces the court the failure to comply with the authorization requirements is hardly immaterial. *See* IC 23–1–11–14(a) (repealed now 23–1–49–2(d)).

The affiliated corporations also assert that if UGL, Blanke, CBL, and HPN are excluded from the consolidated return, the resultant "forfeiture" of the deduction in determining taxable gross income under IC 6–2.1–4–6(a) should not be favored; they cite *Skendzel v. Marshall* (1973), 261 Ind. 226, 301 N.E.2d 641, *cert. denied,* (1974), 415 U.S. 921, 94 S.Ct. 1421, 39 L.Ed.2d 476, as support for this proposition. *Skendzel,* however, addressed the equitable considerations in the enforcement of the forfeiture clause under a land sale contract, and the court therefore finds the case inapplicable.

As the parties agree, no genuine issue of material fact exists concerning whether UGL, Blanke, CBL, and HPN were incorporated in Indiana or authorized to do business in Indiana when the consolidated returns at issue were filed. They were not. Because IC 6–2.1–5–5(b) requires members of an affiliated group to be "incorporated in the state of Indiana or . . . authorized to do business in the state of Indiana" to file a consolidated return, the court finds UGL, Blanke, CBL, and HPN were improperly included in the consolidated returns at issue.[10]

Furthermore, because the status of incorporation within Indiana or authorization to do business in Indiana is a prerequisite to inclusion within a consolidated return, intragroup transactions involving UGL, Blanke, CBL, and HPN are not subject to deduction under IC 6–2.1–4–6(a). Accordingly, not all the reimbursement transactions at issue, as the affiliated corporations contend, are deductible in determining taxable gross income.[11]

## CONCLUSION

Because a genuine issue of material fact exists regarding whether the reimbursement transactions, in whole or in part, reflect mere "pass throughs" of income received in an agency capacity, the court now DENIES both the affiliated corporations' motion for summary judgment and the Department's cross motion for summary judgment on this issue.

No genuine issue of material fact exists concerning whether UGL, Blanke, CBL, and HPN were properly included in the consolidated returns. Accordingly, the court now GRANTS the Department's motion for summary judgment on this issue.

Furthermore, because UGL, Blanke, CBL, and HPN were improperly included in the consolidated returns, the court now DENIES the affiliated corporations' motion for summary judgment on the issue of whether all the reimbursement transactions are deductible in determining taxable gross income.

---

*e.g., Selph v. Illinois Pipe Line Co.* (1934), 206 Ind. 490, 190 N.E. 191 (contract entered into prior to authorization valid).

10. The court leaves for another day questions concerning amended returns and the status as an Indiana corporation or as a foreign corporation authorized to do business in Indiana.

11. At the trial of this case, the affiliated corporations may show that reimbursements not reflecting "pass throughs" of income, if any, were transacted among corporations properly included in the consolidated returns.