UNIVERSAL GROUP LIMITED; Universal Flavors International, Inc.; Universal Flavor Corporation; Universal Flavors of Indiana, Inc.; Universal Flavors of New Jersey, Inc.; Hurty–Peck & Company; Blanke Baer/Bowey Krimko Corporation; and Cock'n Bull, Ltd., Petitioners,

v.

INDIANA DEPARTMENT OF STATE REVENUE, Respondent.

No. 49T10–9108–TA–00039.

Tax Court of Indiana.

May 2, 1994.

Barton T. Sprunger and Mark J. Richards, Ice Miller Donadio & Ryan, Indianapolis, for petitioners.

Pamela Carter, Atty. Gen. of Indiana, David A. Arthur and Jane E. Griffin, Deputy Attys. Gen., Indianapolis, for respondent.

FISHER, Judge.

The Petitioners, Universal Group Limited, Universal Flavors International, Inc., Universal Flavor Corporation, Universal Flavors of Indiana, Inc., Universal Flavors of New Jersey, Inc., Hurty–Peck & Company, Blanke Baer/Bowey Krimko Corporation, and Cock'n Bull, Ltd. (collectively the affiliated corporations)[1] appeal the final determina-

---

1. Universal Group Limited (UGL) directly or indirectly owned all the stock of the other Petitioners. "Corporations are affiliated if at least eighty percent (80%) of the voting stock of one (1) corporation (exclusive of directors' qualifying

tion of the Respondent, the Indiana Department of State Revenue (the Department), denying the affiliated corporations' claims for refund of gross income tax and interest for the years 1983, 1984, and 1985, and the period from January 1, 1986, through March 31, 1986 (the years in issue).

### ISSUE

I. Whether the reimbursement for expenses incurred by the affiliated corporations under certain expense sharing arrangements is a receipt of gross income.

II. Whether IND.CODE 6-2.1-4-6 allows a deduction for the affiliated corporations' receipts of income.

### FACTS AND PROCEDURAL POSTURE

The affiliated corporations first challenged the Department's final determination denying their claims for refund in 1991. On the parties' cross-motions for summary judgment, this court found the following undisputed facts:

> During the years at issue, the affiliated corporations were engaged in the development, production, sales, and distribution of food and beverage flavorings. To avoid duplicating expenses, the affiliated corporations designated one or more corporations to act on behalf of the other corporations in performing certain centralized functions on a non-profit basis. The centralized functions included general accounting and data processing, general administration, customer service accounting, laboratory testing, sample production, international development, and sales and sales-related services. Expenses for these centralized functions were allocated among the affiliated corporations on the basis of formulas designed to approximate each entity's use and benefit from the services. Reimbursement for expenses incurred was generally accomplished by accounting en-

tries, but prior to 1984, checks were sometimes issued between the corporations.

> For the years at issue the affiliated corporations filed consolidated gross income tax returns. By an apparent oversight, however, the 1983 return did not include the income of one subsidiary, Universal Flavors of New Jersey, Inc. (UNJ). Four of the eight corporations included in the consolidated returns, i.e., Universal Flavors International, Inc., Universal Flavor Corporation, Universal Flavors of Indiana, Inc., and UNJ, were each incorporated in Indiana. The other four corporations, UGL, Hurty-Peck & Company (HPN), Blanke Baer/Bowey Krimko Corp. (Blanke), and Cock'n Bull, Ltd. (CBL), were, however, neither Indiana corporations nor authorized to do business in Indiana during the relevant tax period. Blanke and UGL (which changed its name to Universal Flavor Corporation on August 31, 1987) subsequently became authorized to do business in Indiana on January 7, 1988. CBL and HPN, through a process of mergers, were absorbed into Universal Flavors-U.S.A., Incorporated (USA),[2] an Indiana corporation, on September 30, 1987.[3]

> The Department assessed additional gross income tax and interest against the affiliated corporations for the period at issue. The affiliated corporations paid the amount assessed and filed claims for refund of the gross income tax and interest attributable to the reimbursement transactions, totaling $210,213.69. The Department denied the claims for refund ...

*Universal Group Ltd. v. Indiana Dep't of State Revenue* (1993), Ind.Tax, 609 N.E.2d 48, 49-50 (*UGL I* ).

The court granted summary judgment to the Department, holding that UGL, HPN, Blanke, and CBL were neither Indiana corporations nor authorized to do business in

---

shares) is owned by the other corporation." IND.CODE.6-2.1-5-5(a).

**2.** Universal Flavor Corporation, an Indiana corporation, was one of the eight corporations included in the consolidated returns; it changed its name to USA on August 31, 1987.

**3.** CBL merged into HPN on September 30, 1986, and HPN later merged into USA on September 30, 1987.

Indiana during the relevant tax period and therefore were improperly included on the Indiana consolidated return. *Id.* at 57. Because a genuine issue of material fact remained as to whether the reimbursement for expenses incurred by the affiliated corporations constitutes a receipt of gross income, the court denied summary judgment to both parties. That issue is now before the court.

## STANDARD OF REVIEW

■ The tax court reviews appeals from the Department *de novo,* and is bound neither by the issues nor the evidence presented at the administrative level. *Indiana Bell Telephone Co. v. Indiana Dep't of State Revenue* (1994), Ind.Tax, 627 N.E.2d 1386, 1387 (citing *Hoosier Energy Rural Elec. Coop., Inc. v. Indiana Dep't of State Revenue* (1988), Ind.Tax, 528 N.E.2d 867, 869, *aff'd* (1991), Ind., 572 N.E.2d 481, *cert. denied* (1991), — U.S. —, 112 S.Ct. 337, 116 L.Ed.2d 277); IND.CODE 6–8.1–9–1(d).

## DISCUSSION AND DECISION

### I

The affiliated corporations claim that an agency relationship exists between the affiliated corporations and that the agent is a mere conduit of the reimbursed funds. Moreover, the affiliated corporations claim the receipts received as reimbursements are "pass through" transactions, and thus are not subject to gross income tax.

> The Indiana gross income tax is imposed upon the receipt of:
> (1) the entire taxable gross income of a taxpayer who is a resident or a domiciliary of Indiana; and
> (2) the taxable gross income derived from activities or businesses or any other sources within Indiana by a taxpayer who is not a resident or a domiciliary of Indiana.

IND.CODE 6–2.1–2–2. A taxpayer "receives" gross income upon "(1) the actual coming into possession of, or the crediting to, the taxpayer, of gross income; or (2) the payment of a taxpayer's expenses, debts, or other obligations by a third party *for the taxpayer's direct benefit.*" IND.CODE 6–2.1–1–11 (emphasis added). " 'Taxable gross income' means the remainder of: (1) all gross income which is not exempt from tax under IC 6–2.1–1–3; less (2) all deductions which are allowed under IC 6–2.1–4." IND.CODE 6–2.1–1–13. The affiliated corporations do not contend the transactions are exempt from gross income tax under IND.CODE 6–2.1–1–3.

As stated above, the issue whether transactions pursuant to an expense-sharing agreement between the affiliated corporations constitute "pass through" income in an agency capacity was previously before this court on the parties' cross-motions for summary judgment. At that time, the court determined that "a genuine issue of material fact exist[ed] regarding whether the reimbursement transactions, in whole or in part, reflect mere 'pass throughs' of income received in an agency capacity ..." *UGL I,* 609 N.E.2d at 57. Consequently, summary judgment on the issue was denied to both parties. *Id.* at 55. At trial, the affiliated corporations again argued that an agency relationship exists between the affiliated corporations, thereby making the agent a mere conduit of the reimbursed funds, and the transactions mere "pass through" transactions not subject to the gross income tax.

In *UGL I,* the court examined the purposes of the gross income tax as set out by the Indiana Supreme Court:

> To interpret an exception to the [gross income tax] so that it will 'encompass *all* relationships whereby one person incurs expenses for another under an agreement to be reimbursed' ... would, in our opinion, to all practical effects, convert a gross income tax into a net income tax. Without too much difficulty, the receipts in most cases could be made under a contract or oral agreement by which a certain share or portion thereof is a reimbursement for expenses incurred, leaving a tax merely upon a remainder or surplus as a presumptive profit. The gross income tax is applicable regardless of any profit being involved. *Walgreen Co. v. Gross Income Tax Div.* (1947), 225 Ind. 418, 75 N.E.2d 784, 1 A.L.R.2d 1014. A contrary interpretation would result in most non-profit transac-

tions being tax-free. By extending and engrafting exemptions upon a gross tax, it progressively becomes a net tax. We are not arguing that this would be more equitable or just—that is not within our province for decision. The taxing policy, and the basis upon which the tax is to be levied, as well as the exemptions applicable, is for the legislature to determine. *Department of Treasury of Indiana v. Crowder* (1938), 214 Ind. 252, 15 N.E.2d 89.

*Id.* at 53–54 (quoting *Western Adjustment & Inspection Co. v. Gross Income Tax Div.* (1957), 236 Ind. 639, 645, 142 N.E.2d 630, 633). Accordingly, this court found *"Western Adjustment & Inspection* stands for the proposition that reimbursements of a taxpayer's own expenses are receipts of gross income to the taxpayer ... [and that] [c]onversely, reimbursements to an agent for amounts advanced or paid to third parties substantively represent 'pass throughs' of income and therefore are not taxable to the agent." *Id.* at 54 (citing *Gross Income Tax Div. v. Indiana Assoc. Tel. Corp.* (1948), 118 Ind.App. 669, 675–76, 82 N.E.2d 539, 542.

"Moreover, [as the court considered in *UGL I,*] the Department's regulation for the taxation of an agent's gross income also reflects the concept of the agent as a conduit through which funds pass:" *Id.*

Agents. Taxpayers are not subject to gross income tax on income they receive in an agency capacity. However, before a taxpayer may deduct such income in computing his taxable gross *receipts,* he must meet two (2) requirements:

(1) The taxpayer must be a true agent. Agency is a relationship which results from the manifestation of consent by one person to another authorizing the other to act on his behalf and *subject to his complete control,* and consent by the other to so act....

(2) The agent must have no right, title or interest in the money or property received or transferred as an agent. In other words, *the income received for work done or services performed* on behalf of a principal *must pass intact to* the principal or *a third party*; the agent

is merely a conduit through which the funds pass. *A contractual relationship whereby one person incurs expense under an agreement to be reimbursed by another is not an agency relationship unless the other elements of agency exist, particularly the element of control, discussed above.*

*Id.* (quoting 45 I.A.C. 1–1–54).

 45 I.A.C. 1–1–54 specifically requires that all of the elements of an agency exist for a receipt not to be a receipt of taxable gross income. Control is a fundamental element of the agency relationship. *See* 45 I.A.C. 1–1–54. Accordingly, control by a principal corporation over an acting corporation must exist for the reimbursed expenses to be excluded from gross income tax. The evidence adduced at trial reveals that the principal corporations determine the services they need, then they negotiate with the acting corporation for the performance of and compensation for the desired services. *Trial Transcript of June 25, 1993* at 20, 22.

The principal corporations exhibit a certain degree of control in determining the desired services and compensation thereof, however, other evidence submitted at trial contradicts the notion that the principal corporations have *actual* control over the acting corporation. Specifically, the principal corporations merely voice their opinions, complaints, and requests regarding the acting corporation's work, but do not actually control the work. *Trial Transcript of June 25, 1993* at 20–23, 30–32. The lack of control is further shown in that an annual meeting is conducted to review the acting corporation's work, rather than any daily or continuous review and control over the work. *Trial Transcript of June 25, 1993* at 20–21. Thus, the principal corporations, just as an everyday purchaser of services, merely monitor the acting corporation's work.

The principal corporations have the ability, as any purchaser of services, to negotiate the price of services, complain about the quality of services, and request additional services. This ability does not, however, constitute control. The cost sharing agreements between the corporations are agreements to

provide services for compensation. The acting corporation performs a service for the principal corporation for which it is compensated. The acting corporation does not transfer the compensation to a third party. Thus, the amounts paid to the acting corporation are payments for performing a service, a requested or assigned task, and not reimbursements for amounts paid to a third party. Therefore, the court finds the requisite degree of control for an agency relationship is not present in the cost sharing agreements. Accordingly, the reimbursement transactions cannot be treated as mere pass-through transactions.

## II

IC 6–2.1–4–6 provides:

(a) Except as provided in subsections (b) and (c), each taxable year an affiliated group of corporations filing a consolidated return pursuant to IC 6–2.1–5–5 is entitled to a deduction from the gross income reported on such a return. The amount of the deduction equals the total amount of gross income received during the taxable year from transactions between members of the group that are incorporated or authorized to do business in Indiana.[4]

The Department argues that Universal Flavors International, Universal Flavor Corporation, Universal Flavors of Indiana, Inc., and UNJ are not entitled to the deduction under IC 6–2.1–4–6 because they did not show at trial that they were to be included in the Indiana consolidated return. The court disagrees.

"[T]he legislature has in IC 6–2.1–4–6 contemplated the gross income tax consequences of transactions between corporations, though not necessarily transactions conducted within the scope of an agency arrangement." *UGL I*, 609 N.E.2d at 54. IC 6–2.1–4–6(a) provides a deduction to corporations filing consolidated returns equal to "the total amount of gross income received during the taxable year from transactions between members of the [affiliated] group. . . ." Universal Flavors International, Universal Flavor Corporation, Universal Flavors of Indiana, Inc., and UNJ are either incorporated in or authorized to do business in Indiana, they are therefore to be included in the Indiana consolidated gross income tax return for the years in issue. *See* IND.CODE 6–2.1–5–5. Therefore, the court finds the intercompany transactions among those corporations are deductible under IC 6–2.1–4–6.

## CONCLUSION

The court finds for the years in issue, because there is no agency relationship between the affiliated corporations the reimbursement transactions do not constitute "pass through" income, and are gross income subject to taxation. The reimbursement transactions among Universal Flavors International, Universal Flavor Corporation, Universal Flavors of Indiana, Inc., and UNJ are properly deductible pursuant to IC 6–2.1–4–6 because those affiliated corporations are either incorporated in or authorized to do business in Indiana.

---

4. Subsection (b) applies to receipts of income derived from sources outside Indiana and subsection (c) applies to receipts of income in connection with the dissolution of any other member of the affiliated group. Neither of these subsections apply to the case at bar.